## HAYES v. PENNOCK.
### No. 4310.

Court of Civil Appeals of Texas. Beaumont.
Dec. 13, 1945.

Rehearing Denied Jan. 30, 1946.

W. T. McNeill, of Beaumont, for appellant.

Sonfield & Votaw, of Beaumont, for appellee.

MURRAY, Justice.

O. H. Pennock, in his capacity as administrator of the estate of Mrs. Odia Hayes, deceased, brought suit in the district court of Jefferson County against Mark Hayes, Jr., to cancel a deed to certain real estate made by said Mrs. Hayes to Mark Hayes Jr., her grandson, on the ground that no delivery of said deed was made. Suit was brought in two counts, in trespass to try title and for cancellation of the deed. Later, two of Mrs. Hayes' children intervened as plaintiffs in the

suit. Mark Hayes, Jr., answered said suit with a plea of not guilty, general denial, and certain special denials, and also filed a cross action in trespass to try title. At the time of the trial, Pennock abandoned his suit in trespass to try title and proceeded to trial on his alternative remedy of cancellation and rescission of the deed.

Mrs. Hayes shortly before her death executed and acknowledged a deed to her grandson, Mark Hayes, Jr., and placed it among her own papers in her home. She did not make manual delivery of the deed to her grandson. Mark Hayes, Jr., pleaded numerous facts which he alleged to constitute constructive delivery and, on special exception by Pennock, all his pleadings in that regard were stricken. Mark Hayes, Jr., then filed what he termed his trial amendment No. 1, in which he pleaded various facts relied on by him as constituting constructive delivery of the deed. These pleadings were also stricken by the court on exceptions by Pennock, to which action of the court Mark Hayes, Jr., excepted.

The case was tried to a jury and at the conclusion of the testimony the court, on motion of Pennock, took the case from the jury and rendered judgment for Pennock as administrator of the estate, cancelling the deed and dismissing the intervenors from the suit. Mark Hayes, Jr., has properly perfected his appeal to this court. A great deal of testimony offered by the appellant, Mark Hayes, Jr., was excluded by the court on objection of Pennock, the appellee. The controversy is thus before us largely in the form of exceptions to the action of the court in sustaining the appellee's exceptions to appellant's pleading and in exceptions to the action of the court in excluding the testimony tendered by the appellant. The questions for decision on appeal are whether the circumstances set out in the stricken pleadings of the appellant amounted to a constructive delivery of the deed by Mrs. Hayes, and whether the testimony excluded by the court was admissible.

That part of appellant's pleading which was stricken by the court reads as follows:

"By way of further special denial to the aforesaid alternative pleadings of the plaintiff and the interveners, and specially in answer to paragraphs six, seven and eight (6, 7 & 8) thereof, this defendant Mark Hayes, Jr., says that it is not true that said deed dated February 1, 1944, to him, conveying the property involved was not delivered to him by the said Mary Odia Hayes during her lifetime. And in this connection this defendant says the said Mrs. Mary Odia Hayes at or about the time of her signing and acknowledging said deed dated February 1, 1944, made a constructive delivery of said deed to the defendant Mary Hayes, Jr., in that said deed was properly and duly signed and acknowledged by the grantor and she stated at the time to her attorney James H. Rachford, who had acted as scrivener in preparing the instrument for her and who took her acknowledgment, that she wanted her only grandson, the defendant Mark Hayes, Jr. (Whom she regarded as a son and who was then a minor away in the U. S. Military Service) to have the property described in the deed and she was going to leave the deed among her papers where it could be found to be delivered by her children and/or said James H. Rachford to Mark Hayes, Jr., at her death; that in addition, both before and after making of said deed the grantor therein had often expressed her desire and purpose of giving said property to Mark Hayes, Jr., the defendant; that because of the above matters she had the intention upon her part to have said deed delivered to defendant for the purpose of passing title to him. (That in fact she did leave said deed among her papers and same was found by her children after her death.) That the said Mary Odia Hayes by virtue of her acts and conduct aforesaid invested this defendant, Mark Hayes, Jr., at the time, the date of the deed, with title to the land involved herein, the right of possession and enjoyment however, thereof, for the defendant's benefit, being postponed until her death. That therefore and thereby proper delivery of said deed was constructively made to him and vested him with title to said premises, which he still owns by virtue of the above, and is entitled to its possession by virtue thereof."

The appellee's exception to this pleading was in part as follows:

"(a) Because the above quoted allegations in so far as the pleader attempts to set forth the statement which Mrs. Mary Odia Hayes is alleged to have made to her attorney James H. Rachford, when the deed referred to was signed and acknowledged, shows upon its face that such statement, if in fact it was made at all, was a privileged communication passing

between attorney and client, and plaintiff, administrator of the estate of the said Mary Odia Hayes, now deceased, here and now claims such privilege, and by reason thereof such allegations should be stricken.

"(b) Because that portion of the above quoted allegations which set forth that the said Mary Odia Hayes, during her lifetime regarded the defendant, Mark Hayes, Jr., as a minor son, could form no basis of recovery in so far as defendant is concerned in that it is nowhere alleged in said paragraph or anywhere in defendant's answer that the said Mary Odia Hayes during her lifetime was the legally appointed guardian of the person and estate of defendant and therefore not entitled to the possession of defendant's property, and more particularly not entitled to hold said deed which she had signed and acknowledged to her in her possession as trustee for defendant without making a proper delivery of same as required by law and by reason thereof said allegations are wholly immaterial, irrelevant and are highly prejudicial to plaintiff and should be stricken.

"(c) Because said above quoted allegations affirmatively show that there was no delivery of said deed either actual or symbolical by the grantor Mrs. Mary Odia Hayes, but on the contrary, said allegations clearly show that it was the intent of said grantor to retain possession of said instrument during her lifetime without delivering the same to the said Mark Hayes, Jr., either actually or symbolically, and by reason thereof said allegations are irrelevant, immaterial, and highly prejudicial to plaintiff.

"(d) Plaintiff further specially excepts to that portion of the above quoted allegations wherein the pleader alleges that it was the intent of said Mary Odia Hayes, Now deceased, to place said deed among her papers where it could be found and delivered by her children to the defendant after her death in that nowhere in said trial amendment or in defendant's answer does he allege that said children, each or any of them, were ever given possession of said instrument during the lifetime of the grantor, either actual or symbolical, and agreed to deliver same to defendant after the death of said grantor, and by reason thereof said allegations are irrelevant, immaterial, and highly prejudicial to plaintiff.

"(e) Because said above quoted allegations as a whole in so far as they attempt to plead a delivery of said deed to the said Mark Hayes, Jr., during the lifetime of the grantor, either actual or symbolical, are merely conclusions of fact of the pleader in that no competent fact or facts are alleged anywhere in said trial amendment or in defendant's answer sufficient and competent upon which to base a finding of the delivery of said deed, and by reason thereof said allegations are vague, indefinite, uncertain, ambiguous, place too great a burden upon plaintiff, and wholly fail to disclose what the defendant expects to prove upon the trial of this case.

Wherefore, premises considered, plaintiff prays that said allegations be stricken and that he go hence without day and recover in conformity with the prayer contained in his original petition herein.

"2. Moreover plaintiff specially excepts to that portion of numbered paragraph 5 of said trial amendment reading as follows, to-wit:

" 'That the said Mrs. Mary Odia Hayes by virtue of her acts and conduct aforesaid, invested this defendant, Mark Hayes, Jr. at the time, the date of the deed, with title to the land involved herein, the right of possession and enjoyment however, thereof, for the defendant's benefit, being postponed until her death. That therefore and thereby proper delivery of said deed was constructively made to him and vested him with title to said premises, which he still owns by virtue of the above, and is entitled to its possession by virtue thereof.'

"Because all of above quoted allegations are mere conclusions of fact of the pleader, in that no fact or facts are pleaded anywhere in said trial amendment or elsewhere in defendant's answer upon which the finding of a valid delivery of said deed could be predicated, and by reason thereof said allegations are vague, indefinite, uncertain, ambiguous, place too great a burden upon plaintiff, and wholly fail to disclose what defendant expects to prove upon the trial of this case."

The excluded testimony was as follows:

By Mrs. Mark Hayes, Sr., the mother of appellant: "She told me in her home as she was placing an envelope containing her deed to Mark Hayes, Jr. under a receipt box in the wardrobe, to observe closely where she was putting it as the property in the envelope showed where her property went and at her death to give it to Mr. Rachford."

By Mrs. Politz: "She told me that everything went to Mark, Jr.; that he was to have her property; she told me this many times."

By Mrs. P. G. Gray: "My boy had lately gone into the Service and I told Mrs. Hayes that he should be at home working and she replied 'yes, that is the reason I am leaving my home to Mark, Jr.; that it would be a little for him when he gets back.'"

By James H. Rachford: "Q. What did Mrs. Hayes tell you at that time that she wanted? A. She wanted me to draw a deed to Mark Hayes, Jr., to the place where she lived; and to lot 10 in block 10 of Leonard Addition.

"Q. Did she ask you for any advice at that time. A. No.

"Q. I'll ask you whether or not, Mr. Rachford, she stated what she would do with the deed when you fixed it up? A. She said she wanted Mark to have the property and she would give it to his folks before she died.

"Q. Did she state anything about leaving it among her papers for a while? A. Said she would; if she felt like she was going to die she would deliver it to his people.

"Q. Did she say anything about if she didn't deliver it what would take place? A. She said she would leave it some place where they would get it anyway. She made that statement to me.

"Q. Where who 'would get it'? A. Where Mark would get it or his people would get it and give it to him.

"Q. His people—I presume her children? A. His father and mother.

"Q. Did you prepare such a deed, Mr. Rachford? A. I did.

"The Court: That is an undisputed issue.

"Q. Did you prepare this deed which we have introduced in evidence here? Here is a certified copy that has been introduced in evidence (handing document to witness). A. Yes, I drew that deed.

"Q. You drew the deed which was dated February 1, 1944, and which has been introduced in evidence in this case? A. I did.

"Q. Mrs. Hayes acknowledged the deed before you; is that right? A. Yes, sir.

"Q. Did you at the time volunteer any statement to her about the question of delivery of the deed? A. I told her I thought it would be better for her to make a will if she wanted to give him the property. That's about the only thing I said to her.

"Q. Did she follow your advice? A. No, sir, she did not.

"Q. About how old was Mrs. Hayes at the time you talked to her on this occasion? A. I don't know exactly, but she was past sixty some years.

"Q. Was she in more or less feeble condition at the time? A. She had just got over a bad spell of pneumonia and was very weak.

"Q. Did she appear to feel like death was pretty near at hand? A. She told me it was."

By Mark Hayes, Sr., as follows:

"Q. Mr. Hayes, where did you locate this deed to Mark Hayes, Jr., that has been introduced in evidence? A. Well, you want me to tell you how I located it, or just where?

"Q. Tell me where. A. I located it under a letter box that she kept filed in her wardrobe.

"Q. Where? A. In her home, in her living room.

"Q. In your mother's home? A. Yes, sir.

"Q. How come you to locate that deed in that place? A. We were looking for some insurance policies, my brother and my sister and myself, and we couldn't find them, and I called my wife over the telephone at home and she said that all those papers were in there, and she told me to get this particular envelope out from under that box. I got it out from under there and showed it to them.

"Q. Was that the deed? A. That was the deed.

"Q. The deed was in an envelope? A. Yes, sir.

"Q. Your wife told you to locate the deed there? A. She told me where she had seen the deed and where it was put. My mother showed it to her."

By Mrs. L. E. Lindow, as follows:

"Q. Mrs. Lindow, state just what Mrs. Hayes told you about Mr. Rachford's visit to her and what she was proposing to do. A. She told me she had Mr. Rachford to come out that day and she had everything fixed up. I said, 'What do you mean by "fixed up"?' She says, 'Well, I had a deed made to Mark, Jr., today.' I said, 'Well, darling, you must be careful and make

somebody else something,' and she said 'I did.' Really, Hayes done better than I thought she would, because her whole life depended on him, and she just lived by him. I could have seen the deed if I had been a nosy old woman. She said, 'It's right there in the box,' and she said, 'when he is 21 I am going to give it to him and at my death he will take possession.'"

■ The view of the appellee, as reflected by some of his exceptions to the stricken pleading and by his brief, is that no constructive delivery of a deed is possible without some act on the part of the grantor which placed actual physical possession of the deed out of the grantor. He argues that physical possession of the instrument had to be given by the grantor either to the grantee or to some third person for actual delivery to the grantee. From a close examination of the authorities, we do not agree that this is the law. Under circumstances such as are present in this case, in which the grantee is the beloved grandson of the grantor, is a minor, in the armed services of his country in time of war, on duty outside the continental limits of the United States, when the deed is executed and acknowledged as a gift, if the grantor intended that title to the property pass immediately upon execution and acknowledgment then constructive delivery was accomplished and title to the property passed to the grantee at the time of such execution and acknowledgment. See Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Gilbert v. McSpadden, Tex.Civ.App., 91 S.W.2d 889, 890; 14 Texas Jur. 821. As stated in 16 Am.Jur. 512: "Manual delivery to the grantee or his agent is not the only way in which an intention to pass title to property may be signified by the grantor. Furthermore, no other particular act or form of words is necessary to establish the delivery of a deed. The controlling factor is the intention to make delivery, and this intention may be inferred from the grantor's words and acts and from the circumstances preceding, attending, and subsequent to the execution of the instrument." In the case of Gilbert v. McSpadden et al., supra, on which appellee relies greatly in his brief, the following statement is found in the opinion: "In the case at bar there was possibly an intention to deliver the deed at some date in the future, but the grantor retained possession and control of it until his death, *without having evidenced an intention that it should presently become effective."* It was said by the Supreme Court in Henry v. Phillips, supra [105 Tex. 459, 151 S.W. 536]: "Where the grantor executes the deed, and his intention to deliver the same is clear, the title passes to the grantee, irrespective of the fact that the grantor retains control of the deed during his lifetime." In the instant case, the stricken pleading of the appellant alleged execution and acknowledgment with such an intention on the part of the grantor. We think it was error for the trial court to sustain appellee's objections to such pleading.

■ It follows from our holding above in regard to the pleadings that on another trial, with the stricken pleading before the court, the excluded testimony tendered by appellant would not be subject to appellee's objection that it was immaterial, irrelevant, and not supported by the pleadings.

■ Objection was made by appellee to the tendered testimony of Mrs. Mark Hayes, Sr., on the ground that she was prohibited from testifying by Article 3716, R.S., known to some as the "dead man's statute." Neither she nor her husband was a party to the suit. Even if her husband had been a party, she would not have been disqualified under Article 3716. See Pryor v. Awbrey, Tex.Civ.App., 165 S.W.2d 214; Mitchell v. Deane, Tex.Com.App., 10 S.W. 2d 717. Mrs. Hayes was not prohibited from testifying by the statute.

■ In the exceptions of appellee to the stricken pleadings of the appellant, objection was made to that portion of the pleading which alleged that Mrs. Hayes, the deceased grantor in the disputed deed, had made statements to James H. Rachford, her attorney, on the ground that any such statements made to her attorney were privileged communications between attorney and client and that appellee as administrator of the estate of the deceased claimed that privilege. The testimony of the witness James H. Rachford was excluded when tendered by appellant, as immaterial, irrelevant, and not supported by the pleadings. The statements to the witness Rachford were not subject to the claim of privilege on the part of the appellee under the circumstances of the case. Not all statements made by a person to his attorney are privileged communications. To be privileged, the communication must pass between the client and his attorney in professional confidence. 44 Tex.Jur. 1069.

Unless it is clear that secrecy was desired the reason for the privilege ceases. 12 Texas Law Review 151, and cases cited. In any given case we must look to the circumstances to determine the intended character of the communication. Thus in regard to the execution and drafting of wills the knowledge gained by the attorney is privileged during the lifetime of the testator, but the confidence is temporary only and after the death of the testator the attorney may testify as to any facts affecting the execution or contents of the will. 12 Texas Law Review, 152; Pierce v. Farrar, 60 Tex.Civ.App. 12, 126 S.W. 932; Hudson v. Fuson, Tex.Civ.App. 15 S.W.2d 166. It is evident from the bills of exception in the instant case that the deceased made the same or similar statements to other parties as were alleged to have been made to the witness Rachford. She did not intend, from all the circumstances present, that her statements be secret. On the contrary, her statements to Rachford were made here under conditions very similar to those under which a person executes a will, and from the alleged statements to him she intended that such statements would be disclosed. The desire for secrecy being absent, the reason for privilege also is absent, and the statements made to the witness Rachford were not privileged.

For the errors discussed, the judgment of the trial court is reversed and remanded for a new trial.