**NATIONAL SURETY CORPORATION, Relator,**

**v.**

**The Honorable John F. DOMINGUEZ, Judge of the 93rd Judicial District Court, Respondent.**

No. 13–86–029–CV.

Court of Appeals of Texas, Corpus Christi.

June 19, 1986.

Rehearing Denied Aug. 29, 1986.

Richard McCarroll, Demaris Gullekson, Brown, Maroney, Rose, Barber & Dye, Austin, for relator.

Joe K. Longley, Longley & Maxwell, Austin, Ralph L. Alexander, Kelley, Looney, Alexander & Monroe, Edinburg, for respondent.

Before NYE, C.J., and SEERDEN and KENNEDY, JJ.

## OPINION

SEERDEN, Justice.

National Surety Corporation, relator, filed this mandamus proceeding against the Honorable John F. Dominguez, judge of the 93rd Judicial District Court of Hidalgo County, Texas. Relator requests us to order the trial court to vacate its order of January 13, 1986, requiring relator to produce 200 documents for discovery in cause C–572–85–B, First National Bank of Mercedes v. National Surety Corporation. Relator contends that all of the documents are exempt from discovery within the meaning of Tex.R.Civ.P. 166b(3)(d) or the lawyer-client privilege provided in Tex.R.Evid. 503.

The underlying lawsuit giving rise to this mandamus was filed by First National Bank of Mercedes against relator on a banker's blanket bond issued by relator to the bank. Relator received notice of the initial claim on July 11, 1980. It involved transactions between the bank, a corporate customer, La Sara Grain Company (La Sara), and a corporate officer who misapplied corporate funds between 1975 and 1979. Litigation between La Sara, its officer and the bank was concluded in May, 1984, with the bank held liable to La Sara. Relator denied the bank's claim under its bond on December 21, 1984.

At the outset, we must determine whether relator has met the procedural burden which will entitle it to consideration of its request for mandamus.

In *Peeples v. Fourth Supreme Judicial District*, 701 S.W.2d 635 (1985), the Supreme Court set the guidelines to be followed by a party seeking to exclude documents from the discovery process. The party must: 1) specifically plead the particular privilege or immunity claimed; 2) request a hearing on its motion; and 3) tender the documents for an incamera inspection. These requirements were met. A hearing was then conducted concerning the claimed privileges. The parties submitted briefs to the trial court concerning the discoverability of the documents, and the trial court considered the evidence presented at the hearing, the arguments, the briefs and the authorities, and it inspected the documents and ruled them all to be discoverable. Relator contests this ruling now before this Court.

Having determined that the procedural requirements of *Peoples* were met, we now must determine the validity of the trial court's ruling. It is axiomatic that mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (1985); *State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984). The burden of proof to establish the existence of a privilege rests on the one asserting it. *Jordan v. Court of Appeals for the Fourth Supreme Judicial District*, 701 S.W.2d 644 (1985); *Peeples v. Fourth Court of Appeals*, 701 S.W.2d 635 (1985); *Giffin v. Smith*, 688 S.W.2d 112, 114 (Tex.1985).

Relator points to *Maryland American General Insurance Co. v. Blackmon*, 639 S.W.2d 455 (Tex.1982), as an analogous case holding that the documents are privileged. The *Blackmon* case does have a similar fact situation which involved a bank suing an insurance company on its blanket bond. It also involved the same privileges involved in our case, and the court held the privileges applied. However, *Blackmon* is silent about the date from which the privilege begins to be effective. This is a central problem in our case.

Tex.R.Civ.P. 166b(3) provides that the following matters are not discoverable:

\* \* \* \* \* \*

d ... any communication passing between agents or representatives or the employees of any party to the action ...

where made subsequent to the occurrence or transaction upon which the suit is based and made in connection with the prosecution, investigation or defense of the claim or the investigation of the occurrence or transaction out of which the claim has arisen.

To come under this exemption from discovery the rule plainly states that the communication must:

1. pass between agents, representatives or employees of a party or

2. pass between a party and his agents, representatives or their employees.

Each of the communications ordered produced met one or the other of these conditions. In addition, the communication must be:

A. made subsequent to the occurrence or transaction upon which the suit is based, and

B. 1) made in connection with the prosecution, investigation or defense of the claim, or

2) the investigation of the occurrence or transaction out of which the claim has arisen.

The phrases referred to above as B 1 and 2 clearly do not refer to the same subject matter. The phrase in B 1, "made in connection with the prosecution, investigation or defense of the claim," refers to the same subject as A, "made subsequent to the occurrence or transaction upon which the suit is based," and the phrase in B 2 refers to an earlier event, the occurrence out of which the claim, listed as A, has arisen.

Using this analysis, it is clear that the occurrence upon which the suit is based was the denial of the bank's claim under its bond. This occurred on December 21, 1984. The occurrence or transaction out of which that claim arose was the claim by La Sara against the bank. This claim was made in July, 1980.

In order to be exempt from discovery under Tex.R.Civ.P. 166b(3)(d), the communication must meet three general conditions. It must be between persons whose status brings them within the rule; it must be made after the occurrence on which the suit is based; and it must have been made in connection with either the investigation, prosecution or defense of that occurrence or the investigation of the transaction out of which that claim arose. *See State v. Clark*, 695 S.W.2d 673 (Tex.App.—Austin 1985) (writ of mandamus denied).

The documents under consideration dated before December 21, 1984, the date of the occurrence or transaction out of which the suit arises, are, therefore, not exempt from discovery under this rule and the trial court did not abuse its discretion in ordering discovery of these documents. However, the documents dated after December 21, 1984, are exempt from discovery unless the exemption has been waived. The evidence shows that relator has not waived his right to protect the exempt documents from discovery.

Next, we must determine whether the trial court abused its discretion by refusing to hold that some of the documents were exempt from discovery by virtue of the lawyer-client privilege. Tex.R.Evid. 503 and Tex.R.Civ.P. 166b(3)(e).

Under Rule 503, not all communications between lawyers and clients are privileged. The communication must be one intended to be confidential and made for the purpose of facilitating the rendition of legal services to the client.

The purpose of the attorney-client privilege is to promote unrestrained communication and contact between an attorney and client in all matters in which the attorney's professional advice or services are sought, without fear that these confidential communications will be disclosed by the attorney, voluntarily or involuntarily, in any legal proceeding. *West v. Solito*, 563 S.W.2d 240 (Tex.1978). In determining whether the communication is confidential, it is appropriate to look at the circumstances surrounding the communication. *Hayes v. Pennock*, 192 S.W.2d 169, 174 (Tex.Civ. App.—Beaumont 1945, writ ref'd n.r.e.).

Relator has designated sixty-nine documents to which the lawyer-client privilege is claimed. Our examination of these documents reveals that they generally deal with the review of the matters which are the subject of the present suit between relator and the First National Bank of Mercedes or the prior suit by La Sara against its former employee and the First National Bank of Mercedes. From the testimony presented at the hearing on the discovery motion, the circumstances in which the communications were made, and a review of the communications themselves, we find there can be no other conclusion but that these communications were intended to be confidential. Respondent's contention that relator is required to offer direct evidence, such as the testimony of the lawyer, of the intent of confidentiality is without merit. *See Hayes* at 173–74. The facts of this case are distinguishable from *Giffin.* In *Giffin,* there had been no incamera inspection of documents, nor were the documents to which the privilege of confidentiality was asserted before the court for review. The court held that the relator had not met its burden and had offered no evidence of confidentiality. Here, the documents are before us, and the circumstances under which the communications were made were in evidence at the hearing. Accordingly, we hold, as a matter of law, that documents numbered 22, 24, 25, 26, 34, 37, 40 through 44, 49 through 53, 57, 66 through 68, 70, 71, 73 through 77, 80, 81, 85 through 87, 91, 94, 97, 98, 100 through 102, 104, 107, 111 through 115, 119, 124, 125, 128, 129, 131, 145, 150, 152, 153, 155, 158, 161, 166, 167, 169, 171, 174 through 176, 179, 189, 192, 195, and 197 are protected from discovery by virtue of Tex.R.Civ.P. 166b(3)(e) as being privileged by the lawyer-client privilege, Tex.R.Evid. 503.

In addition, the documents numbered 190 through 200, those dated after December 21, 1984, are exempt from discovery under the provisions of Tex.R.Civ.P. 166b(3)(d).

We conditionally grant relator's petition for writ of mandamus; however, the writ will not issue if the trial court amends its discovery order to conform with this opinion.

NYE, C.J., files a concurring opinion.

KENNEDY, J., files a dissenting opinion.

NYE, Chief Justice, concurring.

I agree with the majority's conclusion that National Surety's denial of the claim is the operative occurrence in this discovery case, and that documents made prior to that occurrence are discoverable. I also agree with the dissent that Rule 166b(3)(d) requires a trial court to answer three questions in determining whether investigative documents should be exempt from discovery:

(1) was the communication made among a party and its agents?

(2) was it made subsequent to the occurrence or transaction upon which the suit is based?

(3) was the subject of the communication connected to the prosecution, investigation, or defense of the claim or to the investigation of the occurrence or transaction out of which the claim has arisen?

There is no serious dispute in this mandamus proceeding about questions (1) and (3). We are concerned with the second question here: how far into the history of dealings between parties to a lawsuit may one of the parties keep its internal communications secret?

Rule 166b(3)(d) incorporates the prior provision of old Rule 186a. This new rule has somewhat broadened the investigative exemption by expanding the language relevant to the third question above. However, the rule has not waivered in its requirement that the communication be made subsequent to the occurrence or transaction that is the basis of the suit.

In *Texas Employers' Insurance Association v. Fashing,* 706 S.W.2d 801 (Tex.App.—El Paso 1986), an employee was discharged after filing two worker's compensation claims. In his wrongful discharge suit against his employer, he sought discovery of the investigative files of the compensation carrier. The carrier resisted, the

trial court ordered discovery, and the carrier applied for a writ of mandamus to get the discovery order rescinded. The compensation carrier claimed that the investigative communications regarding the prior worker's compensation claims were exempted because proof that the injury claim was in good faith is an essential element of the wrongful discharge suit. The El Paso Court disagreed with this "essential element" analysis. It held that the discharge was the occurrence upon which the suit was based; the discharge "triggered" the cause of action. *See also State v. Clark*, 695 S.W.2d 673 (Tex.App.—Austin 1985).

This case is similar, though the question is closer. The surety company's denial of the claim on the bond triggered the lawsuit, not the malfeasance of the bank officer almost ten years before that, as the dissent maintains. The malfeasance is merely an element of proof in this suit on the bond.

An insurance policy is at issue in this case, with the unique relationship between insurer and insured. When a person buys a contract of insurance, he has the insurer's promise to pay certain amounts upon the occurrence of certain events. In the normal scheme, there is no dispute between them until the insurer denies a claim for loss. After this, the insured files a lawsuit, not when the loss occurs. Before this, discovery should be allowed.

Where the dealings between the parties are complex and protracted, as in this case, the time determination which a trial court must make, based on statutory construction of Rule 166b(3)(d), is exceedingly difficult to make. In a case like the one that is before us, any number of events may occur which ultimately lead to litigation. Under the present wording of the rule, and the lack of cases construing it, too many lawsuits are being held up for additional months while the discovery disputes are resolved. There has to be a definite test, set out by the Supreme Court, which practitioners and trial courts can easily apply to these recurring problems. Otherwise, our intermediate appellate courts will continue to be faced with what amounts to interlocutory appeals of discovery issues by means of original proceedings.

KENNEDY, Justice, dissenting.

I agree with the majority's position that Rule 166b(3)(d) involves three analytical prongs:

1) a communication passing between agents or representatives or the employees of any party to the action or communications between any party and his agents, representatives or their employees,

2) that communication must be made subsequent to the occurrence or transaction upon which the suit is based, and

3) that communication must be made in connection with:

a) the prosecution, investigation or defense of the claim or

b) the investigation of the occurrence or transaction out of which the claim has arisen.

The second prong of this Rule establishes a time factor—the date, based on the occurrence or transaction, that determines when communications are exempt from discovery. The first and third prongs are subject-matter factors; i.e., the exemption applies to communications amongst certain persons (prong 1) and about certain matters (prong 3).

I disagree with the majority's interpretation of what constitutes an "occurrence or transaction upon which the suit is based." The bank officer's malfeasance occurred between 1975 and 1979. The litigation involving the officer's malfeasance concluded in May, 1984. Relator denied the bank's claim under its bond on December 21, 1984. The majority concludes that the denial of the claim on December 21, 1984, is the occurrence or transaction upon which the suit is based. I disagree.

The Supreme Court stated in *Maryland American General Insurance Co. v. Blackmon*, 639 S.W.2d 455, 457–58 (Tex. 1982):

The protection of a party's right to defend a suit brought against him is the essence of the proviso in Rule [166b(3)(d) ][1], and the privilege exists so long as that right exists. Regardless of the other reasons which might justify the use of this information, it would be impossible to limit the prejudicial effect of disclosure on [the Surety's] right to defend the contract cause of action.

In order for First National Bank of Mercedes to recover under its contract cause of action, the Bank must prove its officer was dishonest and that such dishonesty caused losses within the terms of the bond. *Id.* at 457. Therefore, it follows that the officer's malfeasance is the occurrence or transaction upon which the suit is based. The surety's denial of the claim is not the basis for liability under the contract. The dishonest act provides the basis for liability, if any.

The majority's opinion causes illogical consequences.[2] In *Maryland American* the surety was joined as a defendant in the initial lawsuit claiming dishonesty. The matters sought to be discovered were identical to those before us. The Supreme Court held that the communications were exempt from discovery and would remain so for as long as the surety's liability on the bond remains undetermined. *Id.* at 458. The majority's opinion, in the instant case, allows the bank to lay back, either by refusing to include the surety as a defendant or by failing to make a claim, and effectively whittle away those communications exempt from discovery. However, the surety's exclusion from the initial suit does not absolve its liability. The surety's liability on the bond remains undetermined, regardless of whether it has denied the claim or not.

The El Paso Court of Appeals recently ruled on the Rule 166b(3)(d) exemption in *Texas Employers' Insurance Association*

*v. Fashing,* 706 S.W.2d 801 (Tex.App.—El Paso 1986) (on writ of mandamus). However, that case is factually different. Rubio was an employee of Kessler and injured his back on the job. Rubio filed a claim for workers' compensation benefits; Kessler fired Rubio; and Rubio brought suit for wrongful discharge against Kessler. Rubio sought discovery of Texas Employers' Insurance Association's claim file in his suit against Kessler for wrongful discharge. The El Paso court held the insurance files discoverable because "[t]he investigation files generated by the compensation claim were not in any sense prepared in connection with the occurrence of the discharge or the resulting suit." *Id.* I agree with this holding. The wrongful discharge is distinct from the worker's compensation claim. In the case before us, the officer's malfeasance generated the investigation for which the surety denied the claim.

Rule 166b(3)(d) states that the following *matters* are not discoverable, and not that the following time-periods are not discoverable. The heart of the discovery exemption is destroyed by concluding that communications involving the officer's malfeasance are not exempt merely because the surety has not denied the bank's claim. This encourages a surety to hastily deny the bond claim, thereby subjecting themselves to liability under a "bad faith" claim for failure to properly investigate and make payment under the bond.

The exemption under Rule 166b(3)(d) applies to all the communications before us, and not just those subsequent to December 21, 1984. I respectfully dissent.

## ON MOTION FOR REHEARING

NYE, Chief Justice, concurring.

Since my concurring opinion was handed down in this cause, the Supreme Court has

---

1. The exemption contained in Rule 166b(3)(d) previously existed in TEX.R.CIV.P. 186a (Vernon 1976).

2. Transaction is a word of flexible meaning. It may comprehend a series of many occurrences,

depending not so much upon the immediateness of their connection as upon their logical relationship. 1 R. McDonald, Texas Civil Practice § 3.20 (rev. 1981).

provided some of the guidance called for in my original opinion. The test for applying the privilege now seems to be somewhat more exacting than prior case law suggested. *See Turbodyne Corp. v. Heard*, 29 Tex. Sup.Ct.J. 521 (July 9, 1986); *Stringer v. Eleventh Court of Appeals*, 29 Tex. Sup.Ct.J. 502 (July 2, 1986); *Robinson v. Harkins & Co.*, 711 S.W.2d 619 (Tex.1986). I now agree with Respondent that, under the Supreme Court's interpretation of Rule 166b(3)(d), no investigative privilege applies unless the investigation is conducted after the lawsuit has been filed or after there is good cause to believe it will be filed. Then, the investigation will have been made "in anticipation of litigation." *Allen v. Humphreys*, 559 S.W.2d 798, 803 (Tex.1977). The Supreme Court has reaffirmed the rule that the post-occurrence exemption cannot apply until the suit in which the privilege is claimed has been filed or until there is good cause to believe it will be filed.

Under this analysis, the date the investigative privilege attaches in this case is still the date the claim was denied. The surety company's long-delayed denial of the bank's claim was the final preliminary step to the filing of this lawsuit. Before that event, the surety company and its insured were on the same side of the underlying liability question. After the claim was denied, though, there was good cause for the surety company to believe that the bank would file suit. A person who has been paying premiums all along and then ends up with no coverage will presumably file suit if that person wants to get any benefit from its policy.