The **MEDICAL PROTECTIVE COMPANY, Appellant,**

v.

Sanford **GLANZ, M.D., Appellee.**

No. 13–85–501–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 16, 1986.

Rehearings Denied Nov. 26, 1986.

Thomas H. Crofts, Groce, Lock & Hebdon, San Antonio, Darrell L. Barger, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellant.

Joe Longley, Longley & Maxwell, Austin, for appellee.

Before SEERDEN, UTTER and BENAVIDES, JJ.

## OPINION

SEERDEN, Justice.

Appellant contests the trial court's action in striking appellant's pleadings, granting a take-nothing default judgment, entering a declaratory judgment against appellant establishing the existence of certain insurance coverage, and awarding appellee $28,-054.00 in attorney's fees and expenses, post-judgment interest and court costs. The trial court's actions were all sanctions for discovery abuse under TEX.R.CIV.P. 215. We affirm.

Appellant (Medical Protective) provided medical malpractice insurance for appellee (Glanz). Pursuant to the insurance contract, counsel was retained to defend Glanz in a lawsuit filed in Nueces County by Ligio and Ynes Tavares. The suit resulted in a judgment against Glanz for $570,-000.00. While the Tavares case was on appeal, Medical Protective brought this suit for declaratory judgment and for actual and punitive damages alleging breach of the insurance contract provision requiring Glanz to cooperate in the Tavares defense.

Glanz filed counterclaims for damages and for a declaratory judgment that Medical Protective was obligated to pay the original judgment against Tavares.

The Tavares' intervened, adopting Glanz's pleadings contending that Medical Protective was obligated to pay their judgment.

Eventually, Glanz's counterclaim for damages was severed and the Tavares intervention was dismissed. Consequently, Medical Protective and Glanz are the only parties before this Court and the only issue is the propriety of the action of the trial court in imposing sanctions.

On February 1, 1985, a docket control order was entered setting the case for trial on August 26, 1985. This order also set the deadline for completion of discovery at July 19, 1985, for Medical Protective and July 26, 1985, for Dr. Glanz. Thereafter, on March 12, 1985, pursuant to TEX.R. CIV.P. 167, Glanz filed his First Request for Production of Documents and Tangible Things. Although the request for production specified that the items be produced within thirty days, Medical Protective did not respond to such request until May 29, 1985, after Glanz had filed his first Motion for Sanctions for failure to respond to the request for production of documents. That motion was filed on May 20, 1985.

Medical Protective's response to the request for production was to comply with some of the requests and object to others. The objections were in general form, complaining either that the requests were too general and constituted an impermissible "fishing expedition," that the documents were not relevant and would not lead to discoverable evidence, or that the documents were "privileged" or "privileged pursuant to Rule 166b." Medical Protective made no request for hearing or for an *in-camera* inspection of the documents.

At a hearing on the motion for sanctions on June 14, 1985, the trial judge took the matter under advisement. By order signed July 8, 1985, nunc pro tunc June 25, 1985, the court refused to strike Medical Protective's pleadings, as requested in the Motion for Sanctions, but ordered it to deliver the disputed documents to the trial court by July 5, 1985, for an *in-camera* inspection.

By letter dated July 2, 1985, Medical Protective's attorney of record, George F. Evans, Jr., delivered the documents to the trial court along with a letter discussing why he thought the items were not discoverable. The record fails to show that opposing counsel was furnished a copy of this letter. The documents were separated as follows:

"Exhibit A" consists of the "underwriting file" on insurance policies on Dr. Glanz.

"Exhibit B" is the claims file on claims made in the past five years in which Medical Protective had denied coverage for non-cooperation or misstatements.

"Exhibit C" contains documents relating in general to facts, claims, issues or defenses in the lawsuit, as well as documents relating to the character, reputation and/or habits of Dr. Glanz.

"Exhibit D" includes reports from Guy Allison and others, the attorneys for Medical Protective in the initial suit by Tavares against Glanz.

The trial court found that Medical Protective failed in its burden to present evidence of privilege or immunity from discovery pertaining to any of the documents and in its duty to request an *in-camera* inspection and ordered inspection and copying of all documents in Exhibits A, C, and D.

In its fourth and fifth points of error, appellant complains of the trial court's ruling that certain documents submitted by appellant to the court for *in-camera* inspection were discoverable and further complains of the trial court's actions in subsequently turning them over to appellee's attorney for inspection and copying.

The guidelines for seeking to exclude documents from the discovery process were set out in *Peeples v. Fourth Supreme Judicial District*, 701 S.W.2d 635 (Tex.1985). The party seeking to exclude the documents must: 1) specifically plead the particular privilege or immunity claimed; and 2) request a hearing on its motion. If the trial court determines that an *in-camera* inspection is necessary, the

materials to be inspected must be segregated and submitted to the court. Medical Protective failed to request a hearing on its refusal to produce the documents, although it did attend the hearing once it was set and did tender the documents when the court ordered it to do so.

■ Appellant presented its argument for excluding documents in its letter to the court dated July 2, 1985. As previously stated, the record does not show that a copy of this letter was sent to counsel for the other parties. One of the principal objections relied upon by Medical Protective was that a number of the requests represented a "shotgun approach" and an impermissible "fishing expedition." The letter recites reliance on a slip opinion from the Eleventh Court of Appeals of Eastland, Texas, entitled City of Abilene v. The Honorable Paul Davis.[1] While the letter points out the various objections to discovery, it does not point out specifically which privilege or objection is made to the specific documents. The letter invites the court to review the file and it "will see that 'Exhibit C' contains information which is clearly privileged." (page 4 of letter). The burden is on the party seeking to exclude the documents to show the privilege. *Jordan v. Court of Appeals for the Fourth Supreme Judicial District*, 701 S.W.2d 644, 648–49 (Tex.1985); *Peeples*, 701 S.W.2d at 637; *National Surety Corp. v. Dominguez*, 715 S.W.2d 67 (Tex.App.—Corpus Christi 1986, no writ). This burden applies to each document sought to be excluded so that the court is not required to search through a file and sort out the privileged documents.

■ This Court addressed a similar situation in *National Surety Corp*. In that case, the party asserting the privilege marked each document with the privilege claimed and reasons relied on for exclusion. He requested a hearing and tendered the documents with specific grounds for exclu-

sion listed as to each document. We held this procedure met the guidelines of *Peeples*. We hold that the procedure used by Medical Protective did not meet these guidelines and the trial judge did not abuse its discretion in allowing inspection and copying of the documents in question.

Medical Protective also complains that the trial court released the disputed documents to Glanz's attorney on or about July 15, 1985, without giving it the opportunity to take additional steps, such as the filing of a writ of mandamus.

The record shows that in the letter of July 2, 1985, Mr. Evans, attorney for Medical Protective, advised the court that he was taking his first vacation in several years from July 4 through July 22 and requested that any order which the court entered not require discovery earlier than July 29, 1985. The court's order of July 15, 1985, shows that on July 10, 1985, the court completed its in-camera inspection of the documents and concluded that those contained in Exhibits A, C, and D could be inspected and copied by the attorneys for Dr. Glanz.

On July 10, 1985, Thomas H. Sharp, Jr., a partner in Groce, Locke & Hebdon, and Mr. Evans' supervisor, wrote the court, sending copies of the letter to opposing counsel, advising the court that he had received eight documents, including three motions which were to be heard on July 17, 1985, as well as a notice for the oral deposition of Mickey Rollins, an employee of Medical Protective, to be taken on July 22, 1985. The letter advises that Mr. Evans "is the only lawyer in our law firm who has done any work on this case. None of us other than Mr. Evans have participated in any way whatsoever in any aspect of the preparation of this lawsuit." Enclosed with the letter is a motion requesting that all matters in the case be reset until July 23, 1985, or thereafter. There is a written notation from the court clerk that on July 15, 1985,

1. This Court has discovered that this opinion was handed down November 1, 1984, to be published; however, after a re-hearing, the case was dismissed as moot. On December 13, 1984, an order was entered withdrawing the November 1, opinion. No mention of this history was made by Medical Protective in its letter.

Mr. Sharp was advised that his motion for continuance was denied and that Exhibits A, C, and D had been turned over to Dr. Glanz's attorney.

■ We are aware of no rule which would require the trial court to honor the *ex parte* requests made in Mr. Evans' letter of July 2, 1985 or of Mr. Sharp's letter of July 10. Appellant has furnished no authority for this proposition, nor any argument that would indicate that it was not within the discretion of the trial court to take the action of which it complains. Points of error four and five are overruled.

In its first three points of error, argued together, Medical Protective contends that the trial court abused its discretion in:

1. striking appellant's pleadings and concluding Medical Protective and its attorneys acted in bad faith during pre-trial discovery;

2. rendering a default judgment against it; and,

3. not imposing a lesser sanction.

In considering these points, we must first look to the standard of review applicable to this Court. The Supreme Court has given appellate courts clear instructions in this regard. Justice Wallace, speaking for a unanimous Court, stated in *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985):

> The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Craddock v. Sunshine Bus Lines*, [134 Tex. 388,] 133 S.W.2d 124, 126 (Tex.Comm.App.—1939, opinion adopted). Another way of stating the test is whether the act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1982); *Landry v. Travelers Insurance Co.*, 458 S.W.2d 649, 651 (Tex. 1970). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar cir-

cumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn*, [159 Tex. 421,] 321 S.W.2d 290, 295 (Tex.1959).

To determine the trial judge's guiding rules and principles in imposing sanctions for discovery abuse, we must look to the Texas Rules of Civil Procedure as promulgated and amended by this Court as well as the decisions of appellate courts of this State and of the United States. The Texas Rules of Civil Procedure pertaining to discovery and sanctions for noncompliance have been amended several times, culminating in Rule 215a as it existed at the time of this case, and now embodied in Rule 215. The use of sanctions by trial courts to prevent discovery abuse has developed steadily over the past several years. These changes reflect the continuing pattern both to broaden the discovery process and to encourage sanctions for failure to comply.

The United States Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 [, 96 S.Ct. 2778, 49 L.Ed.2d 747] (1976) approved the use of sanctions not only to assure compliance with the discovery process but also to deter those who might be tempted to abuse discovery in the absence of a deterrent.

This court and various courts of appeals have also followed this progression. See, e.g., *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985), (Kilgarlin, J., concurring) (unnamed witness not permitted to testify); *Jarrett v. Warhola*, 695 S.W.2d 8 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd), (plaintiff's cause of action dismissed); City of *Houston v. Arney*, 680 S.W.2d 867 (Tex.App.—Houston [1st Dist.] 1984, no writ) (defendant's answer struck for failure to answer interrogatories); *Southern Pacific Transportation v. Evans*, 590 S.W.2d 515 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (defendant's answer struck and interlocutory default judgment ren-

dered as to liability), *cert. denied*, 449 U.S. 994 [101 S.Ct. 531, 66 L.Ed.2d 291 (1980).

In various speeches and law review articles, different members of this court have encouraged trial judges to use sanctions to the degree necessary to assure compliance with discovery procedures and deter abuse of the process. Barrow and Henderson, 1984 Amendments to the Texas Rules of Civil Procedure Affecting Discovery, 15 ST. MARY'S L.J. 713 (1984); (presented to the Texas College of the Judiciary Nov. 29, 1984); Kilgarlin and Jackson, Sanctions for Discovery Abuse Under New Rule 215, 15 ST. MARY'S L.J. 767 (1984); Pope and McConnico, Practicing Law With the 1981 Texas Rules, 32 BAYLOR L.REV. 457 (1981); Spears, The Rules of Civil Procedure: 1981 Changes In Pretrial Discovery, 12 ST. MARY'S L.J. 633 (1981).

TEX.R.CIV.P. 215 2.b. provides that "[i]f a party or an officer, director, or managing agent of a party or a person designated under [the Rules] to testify on behalf of a party fails to comply with proper discovery requests or to obey an order to provide or permit discovery, ... the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just." The rule then lists eight choices of sanctions the court may impose. The most severe sanction is number (5), providing for striking the pleadings, dismissing the suit, or granting a default judgment.

The record in this case is replete with accusations of improper conduct, bad faith and misstatement of facts on the part of Medical Protective and its attorneys during the pre-trial and discovery process, as well as justifications and excuses by Medical Protective and its attorneys. Without regard to the merits of the accusations, or of the justness of appellant's replies, it is undisputed that Medical Protective failed to comply with the request for production of documents within the time specified. In addition, in the notice to take the deposition of Mickey Rollins, an employee of Medical Protective, the witness was instructed to bring with him an extensive and comprehensive list of documents. There are twenty categories of documents contained in the notice. Medical Protective made no request for a protective order regarding this notice. When the deposition of Rollins was taken, he advised that he had been instructed by Mr. Evans not to bring the documents with him. These are clear violations of the discovery process as contemplated by Rule 215 2.b. Our understanding of the Texas Supreme Court rulings quoted above is that once it is established that a party has violated the process described in the rule, the trial court, not this court, has the discretion to choose any of the sanctions mentioned in Rule 215 2.b.

We view this discretion as similar to the discretion of the trier of fact in a criminal case, where either the judge or jury may assess punishment within ranges as extreme as probated sentences or at confinement in prison for as little as two years or for the lifetime of the individual. In fact, the analysis could be extended to comparing the sanctions imposed in this case with the death penalty. Where the range of punishment in a criminal case includes the death penalty, it is within the discretion of the jury to assess that punishment. In *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 *reh. denied*, 429 U.S. 890, *on remand*, 340 So.2d 263 (1976), and *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), the U.S. Supreme Court held the death penalty, as applied in those states, unconstitutionally denied criminal defendants due process because there were inadequate guidelines for jurors to consider in exercising their discretion on when to apply that penalty. As recently as 1985, in *Talamini v. Allstate Insurance Co.*, 470 U.S. 1067, 105 S.Ct. 1824, 85 L.Ed.2d 125 (1985), Justice Stevens, concurring in a plurality to deny certiorari in a less severe sanctions case, suggested that certain sanctions should not be warranted short of "a 'gross abuse of the judicial process, or demonstrable and significant harm to a litigant.' " *Id.* at

1827. He further cautioned that "There is and should be, the strongest presumption of open access to all levels of the judicial system.... This Court, above all, should uphold the principle of open access." *Id.* at 1827–1828. In any event, the only question before us is one of abuse of discretion. The question of denial of due process is not before us and cannot be considered. *See Department of Human Resources v. Wininger,* 657 S.W.2d 783, 784 (Tex.1983); *American General Fire and Casualty Co. v. Weinberg,* 639 S.W.2d 688, 689 (Tex. 1982).

■ In exercising its discretion in choosing the appropriate sanction, the trial court is not limited to considering only the specific violation committed but is entitled to consider other matters which have occurred during the litigation. *See Downer v. Aquamarine,* 701 S.W.2d at 241. The trial judge was thus entitled to consider:

1. The failure to respond to the Request for Production of Documents within the time provided;

2. The subsequent failure to either request a protective order or produce the documents for the deposition of Mickey Rollins pursuant to the subpoena *duces tecum;*

3. The statements made by attorney Sharp in seeking a postponement, that attorney Evans was the only lawyer who had participated in any way in any aspect of the preparation of the case, when in fact, some of the disputed documents revealed that Mr. Sharp had consulted both with agents for Medical Protective and Mr. Evans concerning various aspects of the trial preparations and had participated in decisions involving the case;

4. The fact that a certain request for admission of a material fact had been denied and later testimony from Medical Protective's employee with knowledge of the fact admitted the fact and thereafter attorney Evans refused to change the answer and advised the trial court that the only recourse for a wrongful answer to a request for admission was recovery of expenses for proving the incorrectness of the answer;

5. Failing to furnish opposing counsel with arguments and the letter of July 2, 1985, as well as citing as authority a case which had been withdrawn;

6. The fact that, because discovery had not been completed, Glanz was not ready and the case pre-trial deadlines had not been met and the trial setting would be lost.

Counsel for appellee also contends that the trial court could take into consideration the refusal of the witnesses to answer deposition questions regarding the disputed documents. Medical Protective was entitled to be heard in court on their objections to being questioned about the documents in question. In addition, they were entitled to a reasonable time to determine if they should attack the trial court's ruling allowing the production of the documents. Therefore, requesting a ruling from the appropriate court before answering the deposition questions was appropriate.

■ The record does not indicate that the trial court acted in a capricious, arbitrary or unreasonable manner. The sanctions chosen were within its discretion as set out in the Rules of Procedure. Appellant's points of error one, two and three are overruled.

■ In points of error six and seven, appellant complains of the trial court's action in failing to vacate its orders after appellant showed or attempted to show that the Tavares' portion of the case was being settled, and the refusal of the trial court to allow an evidentiary hearing on its motion to vacate the trial court's orders.

The trial court already had the information about the Tavares claim. Whether or not to reconsider its order was within the trial court's discretion. Failing to do so was not error. Appellant's points of error six and seven are overruled.

■ By cross-point of error, appellee requests that appellant be assessed damages under Rule 435. The Court of Appeals has

discretion under this rule to assess damages when the only questions raised on unsuccessful appeals are well settled. *Page v. Cotton Construction Co.*, 617 S.W.2d 723, 725 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). The questions raised on this appeal are in an area of law which is changing and evolving. This court has labored long and hard on the serious consequences resulting from this decision, and to imply that this appeal is frivolous is, it seems to us, the more frivolous comment. Appellee's cross-point is overruled.

The judgment of the trial court is AFFIRMED.

UTTER and BENAVIDES, JJ., both filed concurring opinions.

UTTER, Justice, concurring.

I am compelled to concur in the result reached by the majority based upon the Supreme Court's ruling in *Downer v. Aquamarine Operators Inc.*, 701 S.W.2d 238 (Tex.1985), representing the current state of the law in Texas concerning sanctions for discovery abuse.

My quarrel is not with the outcome of this case, but rather is with the vexing nature by which courts of appeals are forced to review the imposition of discovery sanctions.

The majority states that "[t]he Supreme Court has given appellate courts clear instructions in this regard." I strongly disagree.

In *Downer*, the Supreme Court clearly enunciated a two-part test for reviewing discovery sanctions: (1) whether the applicable rule of civil procedure *authorizes* the trial court to impose the sanction it did, and (2) whether the *exercise* of that authority constituted an abuse of discretion. *Id.* at 240.

In order to determine whether the trial court had authority, we look to the language of the rules of civil procedure concerning sanctions for discovery abuse. *Id.* at 241. If the sanction is *authorized* by the rule, we then move on to the second prong of the test; whether the trial court

abused its discretion in imposing the authorized sanction.

The Supreme Court stated that the test for abuse of discretion "is a question of whether the court acted without reference to any guiding rules and principles." *Id.* at 241–2. The Court went on to state that in order "[t]o determine the trial judge's guiding rules and principles in imposing sanctions for discovery abuse, we must look to the Texas Rules of Civil Procedure...." *Id.* at 242. In my opinion, this is circular reasoning. The second prong of the test leads us back to the first prong. This, in effect, says to courts of appeals that as long as the particular sanction imposed by the trial court was *authorized* by the Texas Rules of Civil Procedure, there can never be an abuse of discretion in imposing it. If this is truly the test, why not clearly say so?

Furthermore, the Supreme Court equates acting "without reference to any guiding rules and principles" with "arbitrary and unreasonable" action. *Id.* at 242. This can mean nothing other than if the trial court acts within the "guiding rules and principles" contained in the Texas Rules of Civil Procedure, then it can never be held to have acted arbitrarily or unreasonably.

If it *is* possible to have an abuse of discretion with the imposition of an *authorized* discovery sanction, how are we to make such a determination? I can glean no guidelines from *Downer*.

BENAVIDES, Justice, concurring.

I concur in the opinion and resulting decision of Justice Seerden, except insofar as its language reciting that the discretion of the trial court in imposing sanctions for discovery abuse is similar to the trier of fact in a criminal case assessing punishment within a range of punishment. As long as punishment is assessed within the allowable range of punishment for the offense committed (absent due process challenges and cruel and unusual considerations) there is no required review of the arbitrariness or unreasonableness of the

actual punishment assessed in a criminal case. On the other hand, however difficult it might be, we are to view the trial court sanction in a civil case with an eye toward whether the trial court's act was arbitrary or unreasonable.

I do not believe that once having been established, a violation of the discovery rules per se mean that any of the sanctions allowed under Rule 215 may be imposed and is not subject to the test of whether the action was arbitrary or unreasonable. Indeed, our Supreme Court has expressly reiterated that " ... [A]nother way of stating the test is whether the act was arbitrary or unreasonable. [Citation omitted]." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 at 242 (Tex.1985).

The changes in the rule reflecting the "continuing pattern to broaden discovery and to encourage sanctions for failure to comply" referred to in *Downer* does not equate to an axiom that if the discovery process is abused, any sanction allowed by the rules is not subject to review. *Downer,* 701 S.W.2d at 242.

While the guiding rules and principles may be vague in the period of transition from "game playing" and a lax adherence to the discovery process toward the bold encouragement of the trial courts to use sanctions to bring about strict compliance, case law, logic and the particulars of each case with an eye toward the particular violation(s) and sanction(s) should result in the evolution of clearly articulated guidelines that should make the task more manageable for the reviewing courts. Certainly one can imagine a scenario where a sanction authorized by the rule could be arbitrary and unreasonable. One must trust that the development of law to correct intolerant discovery abuse will likewise be intolerant to an abuse in the corrective system.

Justice Kilgarlin in writing on the extreme sanction of dismissal with prejudice has written:

... [I]n many cases the gravity of the misconduct is a function of the plaintiff's culpability; the more culpable the plaintiff, the more likely final dismissal is justified. A showing of actual bad faith, as opposed to a lower degree of fault, such as negligence, may be necessary. The gravity of the plaintiff's abuse of discovery may also be reflected in the resultant harm to the defendant. The greater the defendant's harm, the greater the justification for dismissal with prejudice. For instance, if the plaintiff's actions have precluded the defendant from obtaining helpful evidence, dismissal with prejudice may be necessary to protect the defendant. Other circumstances may call for the harsh sanction of final dismissal; but, in general, any time a trial court contemplates disposal of a lawsuit on procedural grounds rather than on the merits it must exercise caution. [citations omitted] Kilgarlin and Jackson, "Sanctions for Discovery Abuse Under New Rule 215," 15 St. Mary's L.J. 767 at 801, 802 (1984).

Justice Seerden's opinion states quite clearly the discovery violations in the instant appeal and enumerates valid considerations properly before the trial court to satisfy me that the court did not abuse its discretion. The discovery violations together with outright misrepresentations by appellant's attorney Evans reflect the type of "game playing" and abuse of the system that we cannot overlook in reviewing the trial court's decision. Appellee could not proceed to trial on trial date with the benefits of discovery allowed him or to which he was entitled by the Rules of Civil Procedure because of appellant's discovery abuse. I agree with my brother Seerden that the record does not indicate that the trial court acted in an arbitrary, capricious or unreasonable manner.