CHEROKEE STEEL
FABRICATORS, INC., Relator,

v.

Hon. Alvin G. KHOURY, Respondent.

No. 12–87–0051–CV.

Court of Appeals of Texas,
Tyler.

April 30, 1987.

Cynthia Hollingsworth, Duffield Smith, Jr., Dallas, for relator.

David Robertson, Longview, James T. Rudd, Grand Prairie, Blake C. Erskine, Longview, Jim Ammerman, II, Marshall, Paul Colley, Jr., Henderson, John D. Sloan, Longview, for respondent.

PER CURIAM.

By way of this original mandamus proceeding, Relator Cherokee Steel Fabricators, Inc. ("Cherokee") entreats us to order that Respondent's order of March 16, 1987, ordering Cherokee to produce certain documents alleged to be privileged, be vacated and that the documents in question be protected from discovery.

On January 6, 1986, a trailer truck hauling a load of steel manufactured by Cherokee was travelling across the Sabine River bridge when a huge piece of steel fell off the bed of the trailer and crushed two oncoming pick-up trucks. Three passengers in those vehicles were killed.

Two days after the accident, Cherokee notified its insurance carrier, Liberty Mutual Insurance Company ("Liberty Mutual"), of the incident and indicated to the claims supervisor, Janna Bloom, that employees of Cherokee had been involved in loading the steel on the trailer a short time before the tragedy occurred. The same day, Bloom ordered Kevin Slaney, an adjustor for Liberty Mutual, to conduct an investigation into the accident. Bloom also contacted and employed a consulting engineer to re-

construct the accident and asked that a report of the results be prepared. Slaney's report was submitted on February 11, 1986, and the consulting engineer's report was dated February 26, 1986. A suit was filed on February 18, 1986, under the wrongful death and survival statutes by representatives of the estates of the decedents and by their survivors, but Cherokee was not joined in the action until August 8, 1986.

Three types of documents are involved in the present controversy:

(1) Kevin Slaney's report;

(2) the findings of the consulting expert; and

(3) witness statements taken by Slaney during his investigation.

Plaintiffs sought discovery of the above items in interrogatories and a request for discovery and production of documents served on Cherokee. After Cherokee refused to produce the desired information, plaintiffs filed a motion to compel. Cherokee in turn filed a motion for protective order, with a supplement, claiming the subject information was privileged under Tex. R.Civ.P. 166b(3).[1] Cherokee also filed a response to the plaintiffs' motion to compel and a supportive memorandum to which were attached the affidavits of Janna Bloom and Kevin Slaney.

We have extracted the following allegations of fact from Bloom's affidavit:

(1) When Bloom was notified of the accident, she was informed of the nature of the accident, that Cherokee had been involved in loading the steel and that three people had been killed;

(2) Because of the number of fatalities and the "extraordinary nature" of the accident, Bloom dispatched a claims adjustor (Slaney) to conduct an investigation of the accident and to determine the potential liability of the insured;

(3) Bloom had two years' experience as an adjustor and six years as a claim supervisor;

(4) It was not the ordinary custom or business practice of Liberty Mutual to send adjustors out of the office to conduct an investigation at the site of the accident;

(5) Most claims are handled over the telephone;

(6) The investigation was not ordered for workers' compensation purposes;

(7) Based on her belief that a lawsuit would be filed, Bloom hired the consulting engineer to prepare an accident reconstruction;

(8) Retention of the consulting engineer was not done in the ordinary course of business, but with the idea that it would be helpful in defending the anticipated lawsuit;

(9) Both reports have been kept confidential, disclosed only within the offices of Liberty Mutual and to Cherokee's attorney.

The following facts were asserted in Kevin Slaney's affidavit:

(1) Slaney was assigned to investigate the accident by Janna Bloom;

(2) The investigation was begun on January 8, 1986, with Slaney travelling to Longview to examine the accident site and vehicles involved;

(3) Based on the investigation, Slaney concluded that steel manufactured by Cherokee had broken loose from a flatbed truck and fallen onto oncoming traffic on a bridge;

(4) Slaney understood that Cherokee had been involved in loading the steel onto the trailer;

(5) While inspecting the vehicles involved in the accident, Slaney saw other men, who did not appear to be police officers, also inspecting the vehicles involved in the accident;

(6) Slaney's report contains a synopsis of witness statements he had recorded during his investigation.

Cherokee's motion and affidavits failed to convince the trial court, and by order signed March 16, 1987, plaintiffs' motion to compel was sustained in all respects.

---

**1.** All references to rules will be to Texas Rules of Civil Procedure.

Cherokee was ordered to produce by March 23, 1987, the information requested in plaintiffs' interrogatories and request for production including, "all statements and investigation reports taken or prepared by defendant or its representatives prior to the time that such defendant was made a party to the ... lawsuit." Cherokee filed this original proceeding to block discovery of the material in question on both a temporary and permanent basis. We granted the motion for leave to file and issued a temporary order forestalling production on March 23.

■ Addressing first the question of whether plaintiffs may obtain copies of the witness statements, clearly they may not. In their interrogatories and request for production, plaintiffs inquired about the existence and contents of statements by Stephen D. Dicks, John Gipson, Jr., Henry Flanagan or any other agent, servant or employee of Cherokee who had knowledge of the loading of the steel on the truck prior to the accident. Subsection 3b of Rule 166b is very specific in proscribing discovery of statements of potential witnesses and parties, to wit:

3. Exemptions. The following matters are not discoverable:

  ....

  b. the written statements of potential witnesses and parties, except that any person, whether a party or not, shall be entitled to obtain, upon request, a copy of a statement he has previously made concerning the action or its subject matter and which is in the possession, custody or control of any party....

Obviously, the manner in which the steel was loaded and secured will be a major issue in the upcoming trial, and those aware of the procedure will very likely be called as witnesses. Their statements are not discoverable, and the trial court abused its discretion in ordering them produced.

We next consider the discoverability of the report filed by Slaney after his investigation of the accident. Rule 166b(3)(d) exempts from discovery communications passing between agents of a party or communications between a party and its agents "made in connection with ... the investigation of the occurrence or transaction out of which the claim has arisen...." The latest pronouncement from the Supreme Court on this provision appears in *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801 (Tex.1986). The court reiterated its position that only information obtained by a party *after there is good cause to believe the suit will be filed* or after institution of a lawsuit is privileged. Whether good cause exists necessarily depends on the facts of the particular case and must be decided using objective standards.

■ By asserting an exemption from discovery, Cherokee assumed the burden of producing evidence concerning the applicability of the privilege claimed. *See Peeples v. Hon. Fourth Supreme Judicial District*, 701 S.W.2d 635, 637 (Tex.1985).[2] The mere fact that an accident occurred is not sufficient to clothe all post-accident investigations with privilege. *Stringer*, 720 S.W.2d at 802. However, we find that the facts asserted in the Bloom and Slaney affidavits amply support Cherokee's position that there was good cause to believe suit would be filed against them by the estates and by the survivors of the three people killed.

■ First, we note that it was not standard operating procedure for an on-the-spot investigation to be ordered by the insurance carrier.[3] Bloom asserted in her affidavit that the investigation was not conducted for any purpose other than to prepare a defense to upcoming litigation.[4] The extraordinary circumstances under

2. We note that Cherokee has followed the correct procedure under *Peeples*, 701 S.W.2d at 637, to preserve for our review their claim of privilege.

3. *See Tucker v. Gayle*, 709 S.W.2d 247 (Tex.App. —Houston [14th Dist.] 1986). (Accident investigation report routinely prepared in the normal course and scope of plant operations.)

4. *See Robinson v. Harkins & Co.*, 711 S.W.2d 619 (Tex.1986). (Investigation made in connection with potential worker's compensation claim.)

which the accident occurred and its severe consequences—three fatalities—moved Bloom to initiate the inquest. Furthermore, Bloom was alerted to the fact that Cherokee had some involvement in loading the steel; it is readily apparent that allegations of negligence in loading the steel would arise in a future lawsuit. All these facts must be viewed in light of Bloom's substantial experience in the insurance claims business. Also to be considered is the fact that Cherokee did not have sole access to the site of the accident or to the vehicles involved. In fact, Slaney attested to the fact that others were also at the scene who appeared to be conducting their own investigation into the incident. The information obtained by Slaney was not therefore "fresh evidence, not obtainable through other sources." *See Stringer*, 720 S.W.2d at 802.

An artfully worded affidavit, prepared in response to a motion to compel, which carefully dodges the pitfalls encountered in other cases would not necessarily support a privilege. Yet it seems quite unrealistic to conclude that Cherokee and its agents did not have good cause to foresee a substantial lawsuit against Cherokee under the circumstances. Consequently, we find that the report prepared by Slaney is privileged under Rule 166b(3)(d).

■ Finally, we consider the merit of Cherokee's contention that the report prepared and submitted by the consulting engineer is privileged under Rule 166b(3)(c).[5] The facts recited above clearly indicate that Bloom employed the engineer to conduct an accident reconstruction to determine Cherokee's potential liability in anticipation of litigation. Unless that engineer is going to be called as a witness, or unless his work product forms a basis of the opinions of an expert who will be called as a witness, the

identity, mental impressions and opinions of that expert are exempt from discovery. The trial court abused its discretion in ordering production of that information.

Mandamus will issue only if Respondent fails to vacate his order of March 16, 1987, and enter an order consistent with this opinion.

COLLEY, J., not participating.

---

5. Rule 166b(3)(c) reads:
   3. Exemptions. The following matters are not discoverable:
   ....
   c. the identity, mental impressions and opinions of an expert who has been informally consulted or of an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial or any documents or tangible things con-

taining such information if the expert will not be called as a witness, except that the identity, mental impressions and opinions of an expert who will not be called to testify and any documents or tangible things containing such impressions and opinions are discoverable if the expert's work product forms a basis either in whole or in part of the opinions of an expert who will be called as a witness....