**SOUTHWEST INNS, LTD., et al., Appellants,**

v.

**GENERAL ELECTRIC COMPANY, Appellee.**

**No. A14–86–769–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 23, 1987.

Rehearing Denied Jan. 21, 1988.

Charles B. Kirklin, William J. Joseph, Jr., H. Victor Thomas, Houston, for appellants.

W. James Kronzer, H. Lee Godfrey, Richard F. Callaway, Elizabeth W. Roberts, Terrell W. Oxford, Houston, for appellee.

Before JUNELL, ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

This appeal is from a take-nothing judgment entered on jury findings in a products liability suit against General Electric (GE) for the sale of allegedly defective through-the-wall air conditioning units installed in appellants' eleven motel and hotel properties. Issues on appeal concern (1) the court order holding privileged certain documents sought through discovery, (2) failure to grant a new trial because of allegedly newly discovered evidence, (3) allegedly improper jury argument, and (4) failure of the jury to find, in answer to three special issues, that each of the following is against the great weight and preponderance of the evidence: the air conditioners were defectively designed; GE failed to give adequate warnings; and GE was negligent in the design and marketing of the air conditioners. We affirm.

This was a highly contested trial. The record consists of some 3,000 pages of testimony and 1,100 exhibits. Nine volumes of the clerk's transcript of trial court documents totaling in excess of 1,100 pages have been filed. Both parties submitted lengthy briefs discussing in great detail the issues before us. However, this gargantuan record was created over a rather sim-

ple fact situation. In the words of appellants, the basis for their suit was that "General Electric air conditioners were not able to sufficiently dehumidify appellants' rooms to prevent mold and mildew growth which resulted in approximately $10 million in damages to appellants." The case was submitted to the jury on twenty-three special issues. By a ten to two verdict the jury failed to find that the air conditioners were defectively designed, that GE failed to give adequate warnings, and that GE was negligent in the design or marketing of the air conditioners. Likewise, on the DTPA claim, the jury failed to answer any of issues favorably to appellants' position. Further, on negligence issues, the jury found appellants to have been 100% negligent and appellee "0% negligent." Finally, the jury found "0" in answer to the issues submitted on damages "caused by mold and mildew."

In their first point of error appellants attack the order of the trial court holding privileged certain of GE's documents sought by appellants. A brief factual background is necessary. The lawsuit was filed on April 16, 1982. Discovery efforts began on December 8, 1983, when appellants filed notice to take oral deposition on December 19th of GE's designated representative. Contained in the notice was a subpoena duces tecum for twenty-eight categories of records. The deposition was not taken at the designated time. Various problems occurred for some months thereafter concerning the production of documents. Accordingly, on June 29, 1984, appellants sought a pretrial conference in order to invoke the assistance of the trial court in the discovery process. While the voluminous transcripts do not contain any court orders (except hereafter discussed), counsel stated in oral argument that the trial court was very active from then on in monitoring and assisting discovery. On October 22, 1985, appellants filed a second Request for Production of Documents specifying thirty-one specific documents or categories of documents. Appellants requested therein that if any documents were withheld under the claim of "work product of the attorneys for Defendant and/or the

claim of attorney/client privilege," GE was to state the claim of privilege or other reason for withholding production; GE was also to identify each such document by, among other things, date, author, subject matter, and name of recipient.

On January 6, 1986, GE filed its response to appellants' October 22 request. Described in the response were fifty-nine documents that GE had not provided to appellants because it asserted them to be privileged under the work-product doctrine. Each of the described documents was attached thereto under seal for the court's *in camera* inspection. The response further stated that documents clearly subject to the attorney-client privilege were not attached, but would be submitted to the court "in whatever manner the Court deems appropriate."

On May 8, 1986, the trial court signed an order holding twenty-five of the numbered documents "privileged work product" and ordered the remaining thirty-four delivered to appellants. Subsequently, on May 15 and 16, 1986, the trial court signed orders reciting that on May 8 he had conducted an *in camera* review of ninety additional documents to which GE had asserted the work-product, investigative or attorney-client privilege. Of that number, the court found that fifty-nine were not privileged and ordered them delivered to appellants, but found the remaining thirty-one privileged and ordered them filed under seal with the court. Finally, the trial court ordered all documents found privileged be provided to the appellate court under seal as a part of the record.

■ Appellants present three major arguments under their first point of error. They first contend the trial court erred in holding certain of the documents privileged because there is no evidence in the record to support the holding. Relying upon *Turbodyne Corp. v. Heard*, 720 S.W.2d 802 (Tex.1986), *Giffin v. Smith*, 688 S.W.2d 112 (Tex.1985), and like cases, appellants state it was GE's burden, in claiming a privilege for the documents, to produce "direct evidence" that each document fell within the particular privilege claimed. This general

statement is of course true insofar as it goes.

Appellee argues that *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56 (Tex.1986), holds extrinsic evidence is not always mandatory. We agree. The facts in that case are identical to the facts before us, except the judge there refused to examine the documents. The defendant in *Weisel* was resisting discovery of certain documents allegedly privileged as attorney-client, attorney work-product documents. However, its list of documents was unaccompanied by any "evidence" substantiating the claim of privilege. Even though asked to do so, the trial judge refused to examine the documents *in camera*. The supreme court said:

> Under the facts of this case, the trial court had no choice but to review the allegedly privileged documents *in camera*, prior to its ruling, because it was asked to make an *in camera* review, and *there was no evidence other than the documents themselves* which substantiated Builders Square's claims of privilege. (emphasis added).

The trial court here, as in *Weisel*, could have refused to examine *in camera* the documents and simply ordered them produced because the claim of privilege was not substantiated by evidence. He chose instead to examine the documents. We agree with appellee's reasoning, based upon *Weisel*, that when the documents themselves may constitute the only evidence of privilege, and the trial court has conducted an *in camera* review, the court need not then consider extrinsic evidence. We therefore overrule appellants' first argument under their first point of error.

■ Appellants next argue the court erred in holding privileged the GE documents submitted for *in camera* inspection. Appellants claim GE had waived its right to assert privilege by failing to timely object to appellants' document requests or to move for protection. Relying primarily upon two recent cases, appellants argue that the failure of GE to file objections to the discovery request within thirty days constitutes a waiver of its right to claim privilege. *Hobson and Lott v. Moore*, 734 S.W.2d 340 (Tex.1987); *Independent Insulating Glass/Southwest, Inc. v. Street*, 722 S.W.2d 798 (Tex.App.—Fort Worth 1987, writ dism'd w.o.j.). In each of the cited cases, however, the party opposing discovery filed objections past the thirty-day period allowed by Rule 168(6) of the Texas Rules of Civil Procedure. The trial court *overruled* the objections and ordered discovery. In each case the court refused to find that under such circumstances the trial court abused its discretion in overruling motions for protection. Here, however, the trial court could have overruled the privilege. Based upon the cited cases, he would have been acting within his discretion. But, again, he chose not to do so, and we hold he was acting within his discretion.

Appellee counters by contending appellants have failed to preserve their now-claimed error, since they at no time asked the trial court to permit discovery of the subject documents on the ground that GE had waived its right to assert them privileged. Appellee argues that since appellants did not present their request to the trial court, they may not first assert it on appeal. Tex.R.App.P. 52(a).

In oral argument appellants maintained their prolonged attempts at discovery satisfied the requirement that they state the "specific grounds for the ruling [they] desired the court to make." Tex.R.App.P. 52(a). We do not agree. Unquestionably, this record presents a multitude of problems arising for both parties in the area of discovery. Appellants' initial subpoena duces tecum called for a mountain of documents. Appellee's counsel responded to the request by letter, estimating compliance would require some 500 man hours to search for the documents, at a cost of approximately $250,000. Appellee suggested a narrowing of the items sought. These and other problems may have caused the trial court to involve himself in the discovery process to the extent he did. At any rate, we are unable to agree with appellants that the protracted dispute over discovery somehow excuses or satisfies their lack of specific assertion in the trial

court. Accordingly, we hold that appellants have not preserved error on this contention.

■ In their final subpoint appellants assert the trial court's error in withholding document production entitles them to a new trial. Appellants ask this court to review each of the documents held privileged and conclude from our examination that the trial court erred. As previously stated, the trial court ordered the documents that he had found privileged filed under seal with our court. Upon motion of appellants we have ordered them filed. Appellee argues it is not necessary for this court to review the documents because the trial court, in requiring GE to produce some of the documents and upholding the claim of privilege on others, acted within his discretion.

For reasons we detail below, we have reluctantly decided to examine those documents held privileged. When this case was submitted following argument, it appeared appellee's position was correct and our disposition was controlled by *Dominguez v. Thirteenth Court of Appeals*, 30 Tex.Sup.Ct.J. 445 (May 20, 1987). There the trial court had examined *in camera* documents alleged to be privileged and therefore not discoverable. The trial court found the documents were not privileged and ordered them produced. In a mandamus proceeding the court of appeals *disagreed*, holding some of the documents exempt from discovery and an overlapping set of documents exempt from discovery under the attorney-client privilege. *National Surety Corp. v. Dominguez*, 715 S.W.2d 67 (Tex.App.—Corpus Christi 1986, mand. granted). The supreme court conditionally granted the writ of mandamus, holding that when a trial court follows the procedural steps outlined in *Peeples v. Honorable Fourth Supreme Judicial District*, 701 S.W.2d 635 (Tex.1985), it does not abuse its discretion.

The facts before us are identical, except reversed. Here the trial court followed the procedural steps outlined in *Peeples,* found some of the documents privileged, and ordered them not produced. It appeared after submission that appellants were asking this court to do what the supreme court prohibited the Thirteenth Court of Appeals from doing in *Dominguez*. However, on October 21, 1987, the supreme court granted respondent's motion for rehearing, withdrew its opinion of May 20, 1987, and denied the writ of mandamus without written opinion.

We believe, therefore, that until the supreme court sets definitive guidelines, and given the circumstances of this case, it is incumbent upon us to examine those documents held privileged by the trial court to determine whether he abused his discretion. We further believe, however, that our examination is only the first step. Should we find a clear abuse of discretion in the court's holding some documents privileged, we must then determine whether, from the record as a whole, the withholding of any document "amounted to such a denial of the rights of the appellant[s] as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case...." Tex.R.App.P. 81(b)(1).

■ We have examined each of the twenty-five documents the trial court first held privileged. All but two of them (Nos. 47 and 48, dated May 4, 1981, and May 1, 1981, respectively) are dated subsequent to April 16, 1982, the date the lawsuit was filed. Document number 47 is a note to the file concerning the "mildew problems in the Houston area" and refers to a contemplated "legal battle." Part of the handwritten notes comprising document number 48 are also attached to document number 47. Were we to hold the trial court erred in holding these two documents privileged, we fail to understand how this could be an abuse of discretion. Clearly the court could have concluded that the memo was written when GE "had good cause to believe suit would be filed" and was thus privileged under the rationale of *Turbodyne Corp. v. Heard,* 720 S.W.2d 802, and *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801 (Tex.1986). Finally, even if we were to determine the trial court abused his discretion, we nevertheless hold

that from the record as a whole the withholding of the documents did not amount to a denial of the rights of appellant such as to cause rendition of an improper judgment in the case. The withheld memorandum merely asserts the position advanced throughout the trial, *i.e.*, that error lay with the construction of the hotels and motels and not the air conditioners. As to the documents dated subsequent to the filing of the lawsuit, each is clearly privileged under Rule 166b(3)(d) and subject to the investigative privilege. The trial court did not abuse his discretion in holding each one privileged.

We have also examined each of the thirty-one documents examined by the trial court *in camera* and held privileged on May 16, 1986. Twenty-three of them are dated subsequent to the time the lawsuit was filed and are clearly subject to the privileges set out in Rule 166b(3)(d) of the Texas Rules of Civil Procedure and Rule 503(d) of the Texas Rules of Evidence. These were communications prepared in connection with the defense of the lawsuit and the majority of them fall within the attorney-client privilege.

Of the remaining eight documents that are either undated or are dated prior to April 16, 1982, our examination reveals the following:

> Document 76—a listing of the number of air conditioner sales for 1982 in four different areas. We do not believe it is privileged, but it has absolutely no materiality to any issue.

> Document 79—a draft of proposed letter from a GE representative to a representative of Moody–Rambin Interests (one of appellants). The draft of the letter summarized the discussions during their meeting in Houston on August 26, 1980, concerning mildew problems. It is cumulative of the problems and GE's position on cause of the problem.

> Document 130—an undated handwritten document on "Humidity/Mildew Problem," giving some of the background. It is cumulative of the positions asserted by GE throughout.

> Document 135—an interbusiness GE memorandum from T.A. Dollard to S.P. Kelbley concerning the humidity problem. While this document is dated January 11, 1982, it was clearly written after GE had good cause to believe a suit would be filed, because it discusses, in dollar amounts, "potential liability caused by unusual humidity levels." For this reason, we believe the trial court would have been acting within his discretion in finding it privileged. Should it be determined, however, that the document was not privileged, it has no evidentiary value on the issue of cause of the problem.

> Document 141—an interoffice memorandum from GE representative vonDreele to GE house counsel Everitt. It clearly refers to contemplated litigation and has no evidentiary value.

> Document 143—handwritten note to file by vonDreele. It contains no evidentiary value.

> Document 146—identical copy of document number 130, above.

> Document 147—an undated compilation of information on several of appellants' hotels and motels concerning builder, architect and reference materials. This was obviously compiled after institution of suit because it references "Harvey Construction Co. v. GE," the original title of the subject suit. The document has no evidentiary value.

From our description of each of the documents, it is evident that the trial court did not abuse his discretion in refusing to order production. Again, however, were we to have determined discovery should have been ordered, and therefore an abuse of discretion resulted, we find nothing in any of the documents that could have conceivably caused the rendition of any other judgment. Appellants' first point is overruled.

In their second point of error appellants allege the trial court erred in overruling their motion for new trial based upon newly discovered evidence. A very brief overview of the evidence is sufficient for discussion of this contention. Many hotels and motels in the southern gulf states were

experiencing mold and mildew in the guest rooms. The problem was not peculiar to appellants' businesses nor were GE's air conditioners the only air conditioners in the affected businesses.

Appellants' theory is that GE defectively designed and marketed its high-efficiency air conditioners. Basically, they contend that the unit cooled the air space too quickly, that the compressor then shut off and did not run long enough to lower sufficiently the humidity in the air space, and that as a result mold and mildew formed. On the other hand, GE takes the position that the air conditioning units were not at fault. GE argues in essence that the hotels and motels were improperly constructed and that appellants were utilizing units too large for the spaces to be cooled. GE points out other causes, including the absence of a proper vapor barrier between outside and inside walls; excessive infiltration of outside air by continuous operation of exhaust fans causing negative air pressure; leaky construction and improperly sealed doors; failure to operate the units in unoccupied rooms; and improper installation of the units.

In 1982, during the construction of their new Houston hotel, the Ibis, appellants cancelled an order for GE's high-efficiency air conditioners, concluding the units caused the mold and mildew problems. However, as a result of an agreement between the parties, the order for such units was reinstated in December 1982. The agreement called for GE to inspect the construction plans, and to ensure that a proper warm side vapor barrier was installed and that a small-size high-efficiency air conditioner be used rather than the usual double-size unit being installed in appellants' properties. As part of the agreement, GE guaranteed in writing that no mildew problems would result.

The evidence at trial showed that the Hotel Ibis was not one of the eleven hotels for which damages were sought. As could be expected, GE placed much emphasis upon this fact. The Hotel Ibis was closed to occupancy in February 1986. This month-long trial ended on June 9, 1986.

Appellants filed a motion for new trial, alleging as one of the grounds newly discovered evidence. At the hearing appellants presented evidence that about mid-June one of their representatives visited the hotel and found the rooms to be colder than the energy management system (a computer-operated system designed to override the controls of each individual unit and permit their operation from a central station) should have permitted. He then reset the controls on the units and reset the energy management system. He again visited the hotel on July 15, 1986, and discovered "mildew was just growing on every surface of the room, carpet, everywhere." Appellants further developed evidence that as of July 15 the energy management system had been inoperable for some time. Additionally, appellants' representative testified that exhaust fans for several of the rooms had burned out so that there was no negative air pressure; and that, in fact, the mildew was worse in the rooms where the fans were burned out. Appellants also pointed out that since the rooms were unoccupied doors were closed, thereby permitting no infiltration of outside air. All of these facts, appellants argue, comprise evidence refuting appellee's position at trial that the fault lay with hotel design, construction and maintenance rather than with the GE units.

Appellee argues, however, that appellants fail to meet any of the requirements for a new trial based on newly discovered evidence. The supreme court set forth those four requirements in *Jackson v. Van Winkle*, 660 S.W.2d 807 (Tex.1983):

(1) the evidence has come to the movant's knowledge since the trial;

(2) it was not owing to the want of due diligence that it did not come sooner;

(3) it is not cumulative; and

(4) it is so material it would probably produce a different result if a new trial were granted.

Resolution of these four factual issues lies within the sound discretion of the trial court and can be overturned only upon a showing of a clear abuse of discretion.

It is clear to us that appellants have failed to satisfy the first requirement—that the evidence is, in fact, new evidence. At trial, appellants' witness, Mr. Hankamer, was questioned about the Hotel Ibis. When asked whether he was complaining about anything that happened at the Hotel Ibis in this lawsuit, he answered:

A. Not in this lawsuit. But, I think that *we will be filing a complaint quite soon, because mildew has been going on in every room in the hotel even the ones under energy management.*

\*     \*     \*     \*     \*     \*

Q. The summer of '84, no problems [at the Hotel Ibis] during the summer of '84?

A. Not except in those eight rooms that weren't on the energy management system, *and they [were] already starting to get bad, I think at that time.* (emphasis supplied).

Another of appellants' witnesses, Mr. Sumner (who provided the testimony on motion for new trial in support of newly discovered evidence), testified *at trial* that even the rooms at the Hotel Ibis not on the energy management system "are developing mold and mildew at this time." On this basis alone the trial court was justified in denying the motion for new trial. Appellants' second point is overruled.

▪▪▪ In their third point of error appellants complain of the action of the court in overruling their objection to appellee's jury argument calling attention to appellants' failure to call their architects and engineers. Placed in proper context, the following argument is quoted:

Finally, the plaintiffs are making some vague and curious allegations at [sic] General Electric failed to warn them or give them adequate instructions on the use of the high efficiency zone line. What ones are they talking about and to whom? Certainly General Electric didn't have a duty to warn or tell them how to build a hotel. As to the importance of proper sizing, even Mr. Joseph himself said that was rudimentary and fundamental, that everyone knew the importance of the proper sizing. General Elec-

tric had been conducting a campaign on that as long as Mr. Von Drelle could remember. Look at Defendant's Exhibit 700 as to the importance of proper sizing. There is not a shred of evidence that General Electric didn't warn Moody–Rambin's engineers and Southwest Inns architects and general contractors.

Mr. Grabbe knew about the importance of sizing and his recommendation to Moody–Rambin was ignored. Southwest Inns realized, that it had made the famous mistake of one size fits all back in 1981, when it began down-sizing the units, long before Mr. Von Drelle suggested or Mr. Dale suggested that they had an oversized problem. They got this information not from an 800 number at G.E. but from its own architects and contractors, and it didn't need for General Electric to tell it that its units were oversized. As to the reduction in the latent capacity, ladies and gentlemen, the warning couldn't have been clearer, if only the plaintiffs had read the design data manual that was furnished, that they testified that they had in their offices.

The plaintiffs have tried to make some sinister implications that some document that was prepared by General Electric that shows that a reduction in latent capacity from 35 percent to 25 percent could cause mold and mildew, you remember the seesaw exhibits they were so proud that they've shown you so many times. Ladies and gentlemen, that is the document that I am proudest of because it is convincing evidence that General Electric tried to warn whomever it could or whomever would listen. That is not an internal memo that is circulated among the big wigs at General Electric. That is a document that is passed out at the General Electric Comfort Colleges that have been conducted for more than ten years, and that it is held for Holiday Inn franchisees. Something that the plaintiffs might have learned, if they had bothered to attend one of the Comfort Colleges. How can it be said that General Electric tried to hide anything when it passes out a document like that to people

who are interested in Holiday Inn meeting and buys its units?

Ladies and gentlemen, *we are dealing with a product that is sold to experts in construction and specified by experts in air conditioning. Mr. Grabbe didn't need a warning, and Archeon, and Heath & House, and that is why the plaintiffs never brought them near this courthouse.* If you will recall back to the day when we selected this jury—

MR. KIRKLIN: Excuse me, Your Honor, I am going to object to counsel, he has now referred to our architects and engineers, and he knows they had equal access to them, and he has implied that we didn't do something, but they didn't have access, and he has misled the jury, and I object to that sort of jury argument.

MR. SUSMAN: Yes, sir, Your Honor, they were on their rebuttal list and they didn't call them.

THE COURT: Well, they may be responded to in argument. Overruled, you may proceed. (emphasis supplied).

Special issue number 3 inquired whether GE failed to give adequate warnings of the dangers or adequate instructions for the safe use of the air conditioners in question. As a part of the issue, the court instructed the jury as follows:

"Adequate warnings and instructions" means warnings and instructions that are given in such form that they could reasonably be expected to catch the attention of the reasonably prudent person, engineer, or architect, in the circumstances of its use; and the content of the warnings and instructions must be of such a nature as to be comprehensible to the average user, engineer, or architect and to convey a fair indication of the nature and extent of the danger, if any, and how to avoid it to the mind of a reasonably prudent person, engineer, or architect.

In view of this instruction, we believe the argument was legitimate and not subject to the objection made. Moreover, there was no objection to a substantially identical argument made just previously:

[Mr. Grabbe] testified further that a 10 percent latent capacity air conditioner would be adequate. And, that he had [the] General Electric design manual in his possession. He could read and understand that the high efficiency unit had a lower latent capacity than the standard unit. And, that he continued to specify high efficiency General Electric units for hotels that he designed. And, that in none of those hotels has there been mold and mildew problems. *No wonder, plaintiffs did not call their own contractors or their engineers or their own architects. You saw how they didn't want to ask or even hear Mr. Grabbe's opinions.* (emphasis supplied).

Appellants are in no position to complain of the action of the court in overruling their objection to argument when similar argument was made to which there was no objection. *See King v. Federal Underwriters Exchange,* 144 Tex. 531, 191 S.W. 2d 855 (1946); *Clancy v. Zale Corp.,* 705 S.W.2d 820, 825 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Appellants' third point of error is overruled.

■ The final three points of error challenge the sufficiency of the evidence. In their fourth point appellants contend the failure of the jury to find that the high-efficiency air conditioners were defectively designed was against the great weight and preponderance of the evidence. In the fifth and sixth points they make the same contention concerning the jury's failure to find that GE did not give adequate warnings and instructions, and that GE was negligent in the design and marketing of the air conditioners.

Appellants begin their argument under these points by calling attention to the jury's answer finding "0" damages when the evidence undisputedly showed they sustained substantial damages from mold and mildew. Appellants state the jury was determined to find in GE's favor regardless of the evidence, citing as support for their position this court's recent opinion in *Sharpe v. Safway Scaffolds Co. of Houston,* 687 S.W.2d 386, 392 (Tex.App.—Houston [14th Dist.] 1985, no writ):

In our view, a finding of no damages in the face of undisputed evidence of severe

and objective injuries demonstrates a prejudice against the party which in reasonable probability affected other material issues. Clearly, such finding indicates that the jury undertook to write a judgment rather than a verdict. Such finding demonstrates a disregard for the evidence which, more likely than not, permeates the case.

Of course, the language quoted was our invitation to the supreme court to reexamine the *Southern Pine Lumber* rule that where the jury has answered special issues on liability in the negative, the failure to award damages is not error. *Southern Pine Lumber Co. v. Andrade*, 132 Tex. 372, 124 S.W.2d 334 (Tex.Comm'n App. 1939, opinion adopted). However, we are still bound by *Southern Pine* and, in fact, followed it in *Safway Scaffolds.*

It is well settled that when a challenge to the factual sufficiency of the evidence is made the court must examine all of the evidence, both in support of and contrary to the challenged fact. And where, as here, the jury has failed to find a fact, the court can set aside the finding only where the finding is so against the great weight and preponderance of the evidence as to be *manifestly unjust. Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633–34 (Tex.1986); *M.J. Sheridan & Son v. Seminole Pipeline Company*, 731 S.W.2d 620, 623 (Tex.App.— Houston [1st Dist.] 1987, no writ).

Both appellants and appellee detail in multiple pages of their respective briefs the evidence the jury heard, both in support of and contrary to each of the three issues about which appellants complain. It would not further the jurisprudence of this state to here detail such evidence. The evidence on each issue was disputed. The failure of the jury to affirmatively answer each special issue complained of is not against the great weight and preponderance of the evidence. These points of error are overruled.

The judgment is affirmed.