David Lee SMITH, Appellant,

v.

J.W. THORNTON, et al., Appellees.

No. C14–87–00531–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 22, 1988.

Rehearing Denied Feb. 2, 1989.

---

1. The Honorable W.A. Hughes, Justice, retired, Court of Appeals, Second District of Texas at Fort Worth, sitting by assignment.

2. The Honorable Spencer Carver, Justice, retired, Court of Appeals, Fifth District of Texas, sitting by assignment.

J. Graham Hill, John C. Landa, Jr., Houston, for appellant.

Alice M. Giessel, Martin L. Mayo, Houston, S.R. Lewis, Jr., James D. Bashline, Otto D. Hewitt, III, Galveston, Mary Madigan Dinan, Bellaire, for appellees.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a take-nothing judgment in a personal injury case. On December 14, 1982, David Lee Smith was hit by a car while on the premises of Monsanto Company's Chocolate Bayou Plant. Smith sued the driver of the car, J.W. Thornton, Crescent Electric Company, Inc., Thornton's employer, and Monsanto Company. (J.W. Thornton died prior to trial, and the Estate of J.W. Thornton was added as a party.) The case was tried before a jury, which found Smith sixty percent negligent. The trial court thus entered a take-nothing judgment in favor of the defendants. We affirm that judgment on appeal.

At the time of the accident, appellant Smith was an employee of Voss International, a subcontractor at the Monsanto plant. Upon his arrival at the plant on the 14th, he parked his car and was crossing the street (in a crosswalk) from his parking lot to his designated work area at approximately 6:50 a.m. Meanwhile, appellee Thornton and his passenger Gerald Cottingham were driving down the street to their parking lot. It was raining and visibility was poor. By the time Thornton saw Smith in the crosswalk, he was unable to stop, and the car struck Smith, breaking both his legs.

At trial the jury found both Smith and Thornton negligent in failing to keep a proper lookout. The jury also found Monsanto negligent in failing to provide a flashing yellow light; however, such negligence was determined not to be a proximate cause of the accident. The jury then assigned sixty percent negligence to Smith, thirty-five percent to Thornton and five percent to Monsanto.

Smith raises two points of error on appeal. In point of error one, he argues that the trial court erred in denying his motion to compel discovery of documents because Monsanto failed to establish that those documents were privileged from discovery. The documents at issue are those materials comprising the accident investigation report. In response to a request for production Monsanto claimed that the report was exempt from discovery under TEX.R. CIV.P. 166b(3)(d), the "party communications rule." After Smith filed a motion to compel discovery (and after the trial had commenced), the trial court held an evidentiary hearing concerning the claim of privilege. Following testimony and an *in camera* inspection, the court ruled that the report was compiled in anticipation of litigation and therefore denied Smith's motion.

■ The party who seeks to limit discovery by asserting a privilege has the burden of proof. *Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex.1986). At the time of trial in January 1987, Rule 166b(3)(d) provided as follows:

3. **Exemptions.** The following matters are not discoverable:

d. with the exception of discoverable communications prepared by or for experts, any communication passing between agents or representatives or the employees of any party to the action or communications between any party and his agents, representatives or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of the claim or the investigation of the occurrence or transaction out of which the claim has arisen; ...

Rule 166b(3)(d) protects only those documents prepared in connection with the prosecution or defense of the lawsuit in which discovery is sought. *Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex. 1986); *Allen v. Humphreys*, 559 S.W.2d 798, 803 (Tex.1977). Furthermore, only information obtained by a party after there is good cause to believe a suit will be filed or

after the institution of a lawsuit is privileged. *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801, 802 (Tex.1986), citing *Robinson* and *Allen.*

Smith contends that Monsanto failed to establish the applicability of the Rule 166b(3)(d) privilege because at the time of the investigation there was not good cause to believe a suit would be filed. In support of its position that the documents were privileged, Monsanto presented the testimony of Gilbert John Wilbeck, Jr., safety and health superintendent at the Chocolate Bayou plant. Wilbeck testified that it is not Monsanto's practice to investigate every incident that occurs on Monsanto plant grounds but only those that occur inside the plant fence line. (It appears from a diagram in the record that the fence does not surround the entire property but only the area of the plant.) This particular accident happened outside the fence line. Wilbeck stated further that while Monsanto investigates every accident involving a Monsanto employee, the company does not customarily investigate accidents involving contractor employees. Also, there is a written policy concerning investigations of Monsanto employee accidents, but there is no such policy regarding investigations of contractor employee accidents. Although he could not remember the names of those involved, Wilbeck maintained that he knew of specific instances where contractor employees were injured on Monsanto premises and Monsanto did not investigate.

Wilbeck explained that Monsanto acted contrary to policy in this instance because "due to the unusual nature of the emergency response and the fact that the emergency medical team and ambulance from Monsanto was used, we felt like there was potential litigation in this case." The unusual circumstance was that the ambulance transported a non-employee to other than a primary point of care. When the ambulance arrived at the designated facility, there was no orthopedic surgeon available. After some discussion, the team agreed to take Smith on to Freeport where he was treated.

Wilbeck testified to other indications that Monsanto thought there was good cause to believe a suit would be filed. Usually statements are taken verbally and interpreted by the investigation committee and are then typed. The reports from the emergency team members attending Smith were handwritten and were very lengthy. All the blank spaces on the paper were crossed out so that nothing could be added. Wilbeck stated that the reports were prepared in this manner so they could be admissible in potential litigation. Following the accident, the first person on the scene was the gate guard, and his statement was taken to gain facts that could be used in litigation. Other statements in the investigation report are those of contractor employees at the scene. Wilbeck testified they were obtained from the contractors because Monsanto rarely interviews such employees directly. When asked if the statements were obtained before or after suit was filed, Wilbeck explained that normally they are not "accessed" except in the process of gathering information for litigation that has actually been filed. However, he did not know when these particular statements were acquired.

Wilbeck was not personally involved in investigating the accident as he did not become safety and health superintendent until November 1984. Neither had he discussed the reason for conducting the investigation with Red Usrey, his predecessor and the person in charge of the investigation. However, by virtue of its placement in Usrey's file drawer, Wilbeck could draw the conclusion that the report was put in a "potential file claim position." He explained that the words "potential litigation" appear on the file in which this particular report was placed. Finally, Wilbeck had taken part in three accident investigations prior to assuming his current position and, based on that experience, stated that if this accident took place today, it is highly likely a claim would result. He further testified that to his knowledge there was no notice letter, telephone call or other communication suggesting that Smith might file suit against Monsanto prior to the actual filing.

■ Once again, if a lawsuit has not been filed, only that information obtained by a party after there is good cause to believe a suit will be filed is privileged. Whether good cause exists necessarily depends on the facts of the particular case and must be decided using objective standards. *Cherokee Steel Fabricators, Inc. v. Khoury,* 733 S.W.2d 563, 565 (Tex.App.—Tyler 1987), *mand. vacated, Matthews v. Twelfth Court of Appeals,* 742 S.W.2d 275 (Tex.1987). After reviewing Wilbeck's testimony, we find that the procedures used in investigating this particular accident support Monsanto's assertion of good cause. Wilbeck testified that Monsanto does not investigate every accident, especially those occurring outside the fence line and those involving contractor employees. Also, some of the statements were obtained and prepared in a manner contrary to usual procedure. Wilbeck stated that Monsanto feared a lawsuit arising from the emergency response to the accident. We note that the emergency team members' statements are the most detailed and are the ones where the blank spaces were crossed out so that nothing could be added. Although ultimately the emergency response was not the subject of the lawsuit, these actions lend credence to Monsanto's claim that it had good cause to believe a suit would be filed. Finally, this is not a situation in which Monsanto had sole access to witnesses and to the accident site. *Cf. Tucker v. Gayle,* 709 S.W.2d 247, 250 (Tex.App.—Houston [14th Dist.] 1986, no writ). Although it happened on Monsanto property, the accident occurred on an access road outside the guarded gate, and the plaintiff was able to take photographs and measurements there.

■ The trial court has great latitude to order or deny discovery, and its action cannot be set aside unless there is a clear showing of abuse of discretion. *Tucker v. Gayle,* 709 S.W.2d at 249. Even if we were to find that the trial court abused its discretion in this case, we would then have to determine from the record as a whole whether the withholding of the investigation report "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment...." TEX.R.APP.P. 81(b)(1); *Southwest Inns, Ltd. v. General Electric Co.,* 744 S.W.2d 258, 262 (Tex.App.—Houston [14th Dist.] 1987, writ denied). Under this appellate standard, the trial court's action must be affirmed.

Apparently based on Wilbeck's testimony, appellant Smith has determined that the investigation report includes a one-page written report, two pages of diagrams and eleven statements (two from Monsanto ambulance attendants, one from a gate guard and "eight statements from non-Monsanto personnel apparently employed by contractors on the plant premises"). In actuality, the report consists of the report of the Monsanto investigation committee, two diagrams and nine statements.

The committee report is simply a one-page summary of the events. Regarding the diagrams, Monsanto furnished Smith a copy of one of them, which is similar to the other but with traffic signs added. As for the statements, there are duplicate ones from Thornton, the driver, and Cottingham, his passenger, both of whom testified at trial (Thornton by deposition). There is also a statement from the Monsanto gate guard, as well as a brief report prepared by an employee in the Monsanto safety department. The report also contains the statements of the ambulance driver and one of the attendants, describing only the treatment of Smith and his transportation to the two hospitals. The remaining statements are those of Richard Pankonun (Pankonien?), Smith's foreman at Voss, John Spears of Voss and Brian Pace of Group Constructors, Inc. All three men (along with Thornton and Cottingham) were listed by Monsanto in response to plaintiff's interrogatories as persons having knowledge of facts relevant to the case, and Pankonun testified at trial.

More importantly, however, we have examined the documents and conclude they contain no admissible evidence that was not before the jury at trial. The testimony addressed the issues at length. Although only Smith, Thornton and Cottingham actu-

ally "witnessed" the accident, others who were nearby described the scene and the lighting, weather and visibility conditions. The information in the report is either cumulative of the evidence or immaterial to the issues at trial, and we find nothing in any of the documents that could conceivably have caused the rendition of any other judgment.

Smith also contends in point of error one that Monsanto failed to establish the applicability of the Rule 166b(3)(d) privilege because the communications comprising the report were not exclusively between agents, employees or representatives of Monsanto. Based on the above discussion, we note that five of the statements in the investigation report were made by non-Monsanto employees (Thornton, Cottingham, Pankonun, Spears and Pace). While Smith's argument has merit, at this stage in the proceedings we must once again review the trial court's action according to the standard imposed by TEX.R.APP.P. 81(b)(1). *Southwest Inns, Ltd. v. General Electric Co.,* 744 S.W.2d at 262. We may only reverse the judgment if the protection of these five statements amounted to such a denial of Smith's rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment. We conclude that it did not. Thornton, Cottingham and Pankonun all testified at trial, and their statements in the investigation report add nothing to their testimony. Spears and Pace were named in Monsanto's response to plaintiff's interrogatories and could have been deposed. Their statements are cumulative of evidence that was before the jury. We therefore overrule point of error one.

In point of error two, Smith argues that the trial court erred in permitting Wilbeck to testify as a fact witness for Monsanto as he was not previously listed in Monsanto's answers to plaintiff's interrogatories as a person with knowledge of facts relevant to the case. Smith maintains that Wilbeck's testimony came as a surprise and caused prejudice to his case because he was denied the opportunity to prepare for it.

Following his testimony in the privilege hearing, Wilbeck was brought back to testify regarding several photographs of the accident scene. These photographs were taken on December 12, 1986, four years after the accident, between 6:52 a.m. and 7:20 a.m. Wilbeck was asked to verify that he was present and that the photographs reasonably and accurately depicted the conditions existing at the time they were taken. Upon objection by Smith that this was testimony as to Monsanto's case in chief, Monsanto argued that the testimony was necessary to rebut photographs taken by plaintiff's expert between 8:00 *p.m.* and 9:00 *p.m.* Monsanto further argued that Smith had been informed several days prior to trial that a rebuttal witness might be called if the expert's photographs were admitted.

Rule 215(5) of the Texas Rules of Civil Procedure gives the trial court discretion to admit testimony for good cause when a party has failed to respond to or to supplement discovery. See *Gannett Outdoor Co. of Texas v. Kubeczka,* 710 S.W.2d 79, 84 (Tex.App.—Houston [14th Dist.] 1986, no writ); *see also Temple v. Zimmer U.S.A., Inc.,* 678 S.W.2d 723, 724 (Tex.App.—Houston [14th Dist.] 1984, no writ). Smith claims that Monsanto's purpose in introducing Wilbeck's testimony was to establish the visibility conditions at the crosswalk at the time of day the accident occurred. Stated another way, "Monsanto's intention was to impart to the jury Mr. Wilbeck's purported knowledge of lighting and visibility conditions in the vicinity of the crosswalk at approximately 7:00 a.m. on a mid-December morning." We find, however, that the testimony simply served to authenticate photographs placed in evidence to rebut other photographs. As such, it was rebuttal testimony, and we find no abuse of discretion in its admission. We therefore overrule point of error two.

The judgment of the trial court is affirmed.

SEARS, Justice, concurring.

On Motion for Rehearing, I concur in the results only in the original opinion.

I disagree with the majority opinion in their finding that the trial court did not commit error in denying discovery. The majority opinion cites the testimony of Mr. Wilbeck which shows that he was not even involved in the investigation and had not discussed it with anyone who was involved in preparing the documents sought to be discovered. Therefore, any opinion offered by him as to the reasons for the investigation are purely conclusions and as such do not satisfy the burden of proof necessary to protect the reports from discovery. Further, the mere conclusion that it is "highly likely that a claim would result" is not sufficient to protect investigative reports from discovery. It is clear that the mere belief that a lawsuit may be filed is not sufficient to protect investigative reports from discovery. *See Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801 (Tex. 1986), and *Turbodyne Corp. v. Heard,* 720 S.W.2d 802 (Tex.1986).

However, in examining the record and the documents sought to be discovered, I would find the error in denying discovery to be harmless for the reasons set forth in the original opinion. Therefore, I concur in the results only.